DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, the state of Ohio, appeals, pursuant to R.C. 2945.67(A) and Crim.R. 12(J), from a judgment of the Williams County Court of Common Pleas granting appellees' motion to suppress evidence obtained from the search of a motor vehicle.
 {¶ 2} On November 19, 2003, appellees, Mathew C. Curtis and David M. Brannack, were each indicted by the Williams County Grand Jury on one count of trafficking in marijuana, a violation of R.C. 2925.03(A) ((2) and (C)(3)(e), a felony of the third degree. Each of their attorneys filed a motion to suppress asserting that a warrantless search of the motor vehicle in which they were traveling at the time of their arrest violated the Fourth and Fourteenth Amendments of the United States Constitution and Section 14, Article I of the Ohio Constitution. Appellees therefore argued that, under Wong Sun v. United States (1963),371 U.S. 471, 484, any evidence seized as a result of that search should be suppressed as the fruit of the poisonous tree.
 {¶ 3} At the hearing on the motions to suppress, Ohio State Patrol Trooper Jeff T. Dickens was the only witness. Additionally, however, the trial court viewed a videotape of the entire stop. The following facts are derived from the trooper's testimony and from the videotape.
 {¶ 4} On the morning of October 27, 2003, at approximately 10:47 a.m., Dickens was patrolling an area of the Ohio Turnpike located in Williams County when he observed a white Ford Taurus that was following too closely behind a tractor-trailer. The trooper therefore initiated a stop of the motor vehicle on the shoulder of the highway.
 {¶ 5} Dickens approached the automobile on the passenger side and asked Curtis, who was operating the motor vehicle, for his driver's license, registration, and insurance. According to the trooper, Curtis handed him a passport and a rental agreement. Dickens
 {¶ 6} then asked Curtis to accompany him to his patrol car while he verified his identification. Brannack, who was Curtis' passenger, remained seated in the front seat of the Taurus.
 {¶ 7} The passport contains a color photograph of Curtis, identifies him as a citizen of the United States of America, and indicates that he is a resident of the state of Michigan. Likewise, the lease agreement lists Curtis' address as "19865 Bowling Green Dr." in the city of Sterling Heights, Michigan. The rental agreement also authorizes Curtis to drive the Taurus out of state and specifically notes that he is "going to Il." The agreement, however, misstates Curtis' operator's license number as C63268911927.
 {¶ 8} A viewing of the videotape reveals that at 10:50:58, Curtis, while seated in the patrol car, gave Dickens a paper captioned "Michigan Temporary Operator License." Curtis indicated that he lost his regular license "about a week ago." As shown on his temporary license, Curtis' actual license number is C 632589119275. The temporary license also lists the driver's home address as 19865 Bowling Green Drive in Sterling Heights, Michigan. Upon Dicken's questioning, Curtis told the trooper that he and Brannack were in Chicago, Illinois for a few days. Dickens then asked him why they visited Chicago and Curtis answered that he had a "girlfriend" there.
 {¶ 9} At 10:51:07 a.m., the trooper informed Curtis that he was just going to issue him a warning. However, instead of requesting a computer check on the validity of Curtis' license, Dickens told Curtis that he was going to get Brannack's driver's license.
 {¶ 10} In his direct testimony at the suppression hearing, Trooper Dickens justified the necessity for obtaining Brannack's license by stating that, because of the passport, he believed that Curtis was a foreigner. He further maintained that due to the fact that he thought Curtis was in possession of only a passport, he had no "driving privileges." At this point in his testimony, Trooper Dickens alleged that Curtis had not given him his driver's license. He therefore claimed that he needed to speak to Brannack to ascertain whether he had a valid driver's license.
 {¶ 11} When Dickens returned to the Taurus to speak to Brannack, he noticed that Brannack's hand was shaking when he gave the trooper his license. Upon questioning by Dickens, Brannack stated that he and Curtis went to Chicago on vacation and that he was "not aware of" the fact that Curtis had a girlfriend living there. At trial, Dickens declared that he observed a can of "organic deodorizer" in the glove compartment and indicated that, because its masks other odors, its presence is a sign of drug activity. The trooper also noticed that Curtis and Brannack each had a cell phone, that there was a road map in the motor vehicle, and that there were pillows, food wrappers and bottles of various types of beverages in the Taurus. Dickens testified that Curtis' failure to provide him with a driver's license, the differing stories as to why appellees went to Chicago, the fact that appellees were driving a rental car, and the fact that they refused to make eye contact with him were significant in creating his suspicion that appellees were engaged in, or had been engaged in, criminal activity.
 {¶ 12} The trooper then returned to his police cruiser to question Curtis further. At 10:52:56 a.m., Dickens called in Curtis' motor vehicle operator's license number. He claimed that he ran Curtis' license number "off the rental agreement." This license number check showed that Curtis had a valid license. After asking Curtis to explain his passenger's nervousness, Dickens asked him whether there was any contraband, such as marijuana, cocaine, large sums of money, or bodies, in the trunk of the rental car. Curtis said "No" to each of these items. The trooper then asked Curtis for his consent to search the motor vehicle. Curtis refused the request, telling Dickens that he would rather have the trooper obtain a search warrant from a judge.
 {¶ 13} At 10:53:33 a.m., the license check revealed that Curtis' operator's license was valid. At 10:54 a.m., Trooper Dickens called a K-9 handler and asked him to bring his drug detection dog to scene. Nevertheless, at 11:00.30 a.m. Dickens provided Curtis with his written warning for following to closely behind the tractor-trailer. Even though he acknowledged that the traffic stop was over at that point, the trooper continued to detain appellees. While waiting for the K-9 unit to arrive, Dickens called the El Paso Intelligence Center ("EPIC"), which has a data base containing, among other things, current drug investigations and drug convictions. He provided the information necessary for EPIC to determine whether Curtis and Brannack were involved in any drug activity.
 {¶ 14} The trooper was still on the telephone with EPIC when, at 11:06 a.m., Curtis interrupted and told Dickens that he had a baggie of marijuana in a sunglass case in the
 {¶ 15} armrest of the rental car. Curtis claimed that the marijuana was his and that Brannack had no knowledge of its existence. At 11:16 a.m., the K-9 unit arrived on the scene. However, because Dickens and the K-9 handler had probable cause to search the Taurus, they did not utilize the services of the drug detection dog. The officers then removed Brannack from the automobile and frisked him. After finding the baggie of marijuana in the armrest, the law enforcement officers opened the trunk of the car and discovered a bag containing approximately 13,000 grams of marijuana.
 {¶ 16} On cross-examination, Curtis' trial counsel had the trooper review that portion of the videotape where he called in Curtis' driver's license number. Counsel then had the trooper compare the alleged driver's license number on the rental agreement and the driver's license number on the temporary license. Upon further cross-examination, Dickens finally acknowledged that Curtis must have given him his temporary driver's license when he gave him his passport and the rental agreement. The trooper later admitted that Curtis told him that he had lost his regular driver's license and that the state of Michigan provided him with the temporary license "until a valid plastic one could be issued." However, Dickens insisted that because the license was a "temporary," he still had to determine whether Brannack had a valid motor vehicle operator's license.
 {¶ 17} Appellant and appellees both filed post-hearing memoranda in support of and in opposition to the motion to suppress. Appellant raised the issue of Brannack's alleged inability to challenge the warrantless search because he lacked standing. Brannack
 {¶ 18} replied that the state waived this issue because it failed to raise it at the evidentiary hearing, thereby preventing Brannack from presenting evidence on this issue.
 {¶ 19} In its identical judgment entries, the lower court found Trooper Dickens' testimony "disingenuous and not credible relating to the delay in issuing [the] warning and terminating the stop." The court therefore held that "the Trooper engaged in an impermissible fishing expedition, and that the purported routine procedures were performed as an impermissible delaying excuse to extend the detention of the defendants in order to search for evidence of a crime." The judgment in the Brannack case did not address the issue of standing.
 {¶ 20} Appellant filed separate, timely notices of appeal of each judgment. On June 24, 2004, this court, sua sponte, consolidated the appeals. Appellant asserts that the trial court committed the following errors:
 {¶ 21} "The trial court erred in suppressing the evidence against Brannack because he has no Fourth Amendment standing to challenge either the search or the seizure."
 {¶ 22} "The trial court erred in finding the scope and duration of the investigative stop was constitutionally impermissible, as the officer did not engage in an impermissible delay.
 {¶ 23} In its first assignment of error, appellant claims that, underRakas v. Illinois (1978), 439 U.S. 128, Brannack, as a passenger in the Taurus, had no expectation of
 {¶ 24} privacy in the leased motor vehicle. Brannack argues that the state waived this issue because it failed to raise the same at the proper time in the common pleas court.
 {¶ 25} A well-established principle of law is that an error must be brought to the trial court's attention, by objection or otherwise, or it is waived for purposes of appeal. State v. Burgess, 11th Dist. No. 2003-L-069, 2004-Ohio-4395, at ¶ 18, citing Stores Realty Co. v. Cty ofCleveland, Bd. of Bldg. Standards and Bldg. Appeals (1975),41 Ohio St.2d 41, 43. In the instant case, appellant did not raise the question of Brannack's standing before or during the hearing on the motion to suppress. Nevertheless, it was raised in a post-hearing memorandum. Brannack filed a memorandum in opposition, and appellant filed a reply. Therefore, despite the fact that the trial court failed to expressly rule on this issue, it is apparent that it was raised and impliedly overruled by the lower court. Maust v. Palmer (1994),94 Ohio App.3d 764, 769.
 {¶ 26} A passenger in a motor vehicle does not automatically have standing to challenge the search of that vehicle. Rakas,439 U.S. at 148-149. If, however "either the stopping of the car or the passenger's removal from it is unreasonable in a Fourth Amendment sense, then surely the passenger has standing to object to those constitutional violations and to have suppressed any evidence found in the car which is their fruit." State v. Carter (1994), 69 Ohio St.3d 57, 63. Because, as discussed below, we find that the delay in detaining of appellees and the removal of Brannack from the motor vehicle constituted unlawful seizures, we also conclude that Brannack has standing to object toFourth Amendment violations and, therefore, to request the suppression of any evidence found in the Taurus as the fruit of the poisonous tree. Accordingly, appellant's first assignment of error is found not well taken.
 {¶ 27} In its second assignment of error, appellant claims that the trial court erred in finding that the scope and duration of Trooper Dickens investigative stop was constitutionally impermissible. First, the state insists that due to the existence of the videotape, we need not accord any deference to the trial court's findings and that, therefore, our entire review of this, case, as based upon our viewing of that tape, is de novo. We disagree.
 {¶ 28} The fact that this court has access to the videotape does not change our standard of review. That standard requires us to determine whether the common pleas court's decision to grant the motions to suppress is whether the trial court's findings are supported by competent, credible evidence. State v. Winand (1996),116 Ohio App.3d 286, 288, citing Tallmadge v. McCoy (1994),96 Ohio App.3d 604, 608. The trial court, as the trier of fact resolves questions of fact and evaluates the credibility of witnesses.State v. DePew (1988), 38 Ohio St.3d 275, 277; State v. Hopfer (1996),112 Ohio App.3d 521. "Once we accept those facts as true, this court is required to independently determine, as a matter of law and without deference to the trial court's conclusion, whether the trial court met the applicable legal standard." City of Lyndhurst v. Shin Yee, 8th App. No. 84720, 2005-Ohio-624, at ¶ 9, citing State v. Lloyd (1998),126 Ohio App.3d 95.
 {¶ 29} Second, appellant claims that the trial court engaged in an impermissible determination of Trooper Dickens' subjective motives for detaining appellees in order to
 {¶ 30} find the officer's testimony not credible. Appellant urges this court to view the videotape of the stop in order to determine whether the "circumstances objectively justified the continuation of the stop." Third, appellant maintains that the duration of the stop was not impermissible because Trooper Dickens had a reasonable, articulable suspicion of criminal activity within four to five minutes after the commencement of the stop.
 {¶ 31} This court did view the videotape of the stop in its entirety and finds that it supports the judgment of the trial court. Further, we conclude that, based upon his contradictory testimony and the videotape, Trooper Dickens did not have a reasonable, articulable suspicion of criminal activity that would permit him to approach Brannack to ask for his driver's license.
 {¶ 32} The Fourth Amendment to the United States Constitution prohibits the unreasonable search and seizure of persons or their property. Harris v. United States (1947), 331 U.S. 145, 150. Likewise Section 14, Article I, of the Ohio Constitution bars unreasonable searches and seizures. State v. Orr, 91 Ohio St.3d 389, 391, 2001-Ohio-50. Searches conducted without a warrant are per se unreasonable, subject to specifically established exceptions. State v. Smith (1978),56 Ohio St.2d 405, 407. Absent an exception, courts are required to exclude all evidence seized in violation of the Fourth Amendment. Mappv. Ohio (1961), 367 U.S. 643, 655. However, an investigative stop
 {¶ 33} of a motor vehicle is an exception to the Fourth Amendment warrant requirement. Delaware v. Prouse (1979), 440 U.S. 648, 668.
 {¶ 34} The lawfulness of an initial stop will not support a "fishing expedition" for evidence of crime. State v. Bevan (1992),80 Ohio App.3d 126, 130. Once an officer lawfully stops a vehicle, the officer must limit the scope of the stop to its underlying justification. Florida v. Royer (1983), 460 U.S. 491, 500. Thus, the stop can "last no longer than is necessary to effectuate the purpose of the stop." Id. An officer may expand the scope of the stop and may continue the detention of an individual only if the officer discovers reasonably articulable facts that give rise to a suspicion of criminal activity.State v. Robinette (1997), 80 Ohio St.3d 234, 241.
 {¶ 35} In the case sub judice, no challenge is made to the lawfulness of the stop. The sole issue is whether Trooper Dickens had any reasonable, articulable facts justifying his detention of appellees for the purpose of determining whether Brannack had a valid driver's license. At the outset of the stop, the readily discernable facts before the trooper were that Curtis was a resident of the United States, that the car was leased to Curtis, and that Curtis lost his driver's license and had a temporary "paper" license. Dickens could then permissibly detain appellees for a period of time sufficient to run a computer check on Curtis' license, registration, and vehicle license plates and to issue him the promised warning. Delaware v. Prouse, at 659. However, he did not do so. Instead, the trooper returned to the passenger side of the Taurus and engaged Brannack in conversation. His
 {¶ 36} testimony as to why he acted in the manner that he acted was conflicting and clearly raised a question of credibility. In sum, there is nothing in the record of this case to even suggest that Trooper Dickens had a reasonable, articulable suspicion of criminal activity prior to returning to the vehicle to speak with Brannack. Accordingly, as a matter of law, the trial court met the applicable standard and did not err in granting appellees' motion to supress. Appellant's second assignment of error is found not welltaken.
 {¶ 37} The judgment of the Williams County Court of Common Pleas is affirmed. Appellant, the state of Ohio, is ordered to pay the costs of this appeal. See App.R. 24.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J., Singer, P.J., Skow, J., Concur.