[Cite as *State ex rel. Cordell v. Indus. Comm.*, 2014-Ohio-5561.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. James F. Cordell, | : | |
| Relator, | : | |
| v. | : | No. 13AP-1017 |
| Pallet Companies, Inc. and Industrial Commission of Ohio, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on December 18, 2014

*Craig E. Gould*, for relator.

*Dinsmore & Shohl, LLP, Christen S. Hignett* and *Michael L. Squillace,* for respondent Pallet Companies, Inc.

*Michael DeWine*, Attorney General, *Lisa R. Miller* and *Cheryl J. Nester,* for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

KLATT, J.

{¶ 1} Relator, James F. Cordell, commenced this original action in mandamus seeking an order compelling respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying temporary total disability ("TTD") compensation and to enter an order granting said compensation.

{¶ 2}   Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred this matter to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto.  Relying principally upon *State ex rel. Gross v. Indus. Comm.*, 115 Ohio St.3d 249, 2007-Ohio-4916 ("*Gross II*") and *State ex rel. Ohio Welded Blank v. Indus. Comm.*, 10th Dist. No. 08AP-772, 2009-Ohio-4646, the magistrate found that the doctrine of voluntary abandonment did not apply to bar receipt of TTD compensation in a case involving a pre-injury infraction undetected until after the injury.   Therefore, the magistrate has recommended that we grant relator's request for a writ of mandamus and order the commission to enter an order granting relator TTD compensation.

{¶ 3}   Respondent, Pallet Companies, Inc., has filed objections to the magistrate's decision.  In its first objection, Pallet argues that the magistrate erred by failing to apply the legal principles discussed in *State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.*, 72 Ohio St.3d 401 (1995); *State ex rel. McCoy v. Dedicated Transport, Inc.*, 97 Ohio St.3d 25, 2002-Ohio-5305; *State ex rel. Cobb v. Indus. Comm.*, 88 Ohio St.3d 54 (2000); and *State ex rel. PaySource USA, Inc. v. Indus. Comm.*, 10th Dist. No. 08AP-677 (June 30, 2009) (memorandum decision).  We disagree.

{¶ 4}   As indicated in the magistrate's decision, the issue raised in Pallet's first objection is resolved by *Gross II* and this court's decision in *Ohio Welded Blank*.  Relying on *Gross II*, this court expressly held that:

> *Gross II* indicates that a pre-injury infraction undetected until after the injury is not grounds for concluding claimant voluntarily abandoned his employment.   Although the infraction may be grounds for terminating relator's employment, *Gross II* clarifies that it is not grounds for concluding claimant abandoned his employment so as to preclude temporary total benefits.

*Ohio Welded Blank* at ¶ 20.

{¶ 5}   As noted by the Supreme Court in *State ex rel. Reitter Stucco, Inc. v. Indus. Comm.*, 117 Ohio St.3d 71, 2008-Ohio-499, "even if a termination satisfies all three *Louisiana-Pacific* criteria for being a voluntary termination, eligibility for temporary total disability compensation remains if the claimant was still disabled at the time the

discharge occurred." *Id.* at ¶ 10. Therefore, Pallet's argument that *Louisiana-Pacific* and *McCoy* prelude relator's receipt of TTD compensation lacks merit.

{¶ 6} Nor does *Cobb* require a different result. As noted by the magistrate, the application of the voluntary-abandonment doctrine to a pre-injury infraction undetected until after injury is controlled by *Gross II* and *Ohio Welded Blank*, not *Cobb*. *Cobb* did not involve a pre-injury infraction. Lastly, we are unpersuaded by Pallet's reliance on this court's decision in *PaySource*. Although *PaySource* does support Pallet's argument, we note that *PaySource* was a memorandum decision that adopted a magistrate's decision to which there were no objections. It does not appear that the applicability of *Gross II* was even raised in *PaySource*. Moreover, in *Ohio Welded Blank* and *State ex rel. Ohio Decorative Prods., Inc. v. Indus. Comm.,* 10th Dist. No. 10AP-498 (Sept. 15, 2011) (memorandum decision), this court did not follow the magistrate's legal analysis in *PaySource* based upon *Gross II*. For these reasons, we overrule Pallet's first objection.

{¶ 7} In its second objection, Pallet contends that the magistrate's decision runs contrary to public policy. Although Pallet's argument highlights a public policy issue, that issue is best addressed in the General Assembly or in the Supreme Court of Ohio. As an intermediate appellate court, this court is bound by decisions of the Supreme Court of Ohio. As previously discussed, *Gross II* is dispositive of the issue presented here. Therefore, we overrule Pallet's second objections.

{¶ 8} Following an independent review of this matter, we find that the magistrate has properly determined the facts and applied the appropriate law. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we grant relator's request for a writ of mandamus.

*Objections overruled; writ of mandamus granted.*

DORRIAN and BRUNNER, JJ., concur.

———————————

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State ex rel. James F. Cordell,          :

          Relator,          :

v.          :                    No. 13AP-1017

Pallet Companies, Inc. and          :                    (REGULAR CALENDAR)
Industrial Commission of Ohio,
          :
          Respondents.
          :

---

M A G I S T R A T E ' S   D E C I S I O N

Rendered on July 25, 2014

---

*Craig E. Gould*, for relator.

*Dinsmore & Shohl, LLP, Christen S. Hignett* and *Michael L. Squillace,* for respondent Pallet Companies, Inc.

*Michael DeWine*, Attorney General, *Lisa R. Miller* and *Cheryl J. Nester,* for respondent Industrial Commission of Ohio.

---

IN MANDAMUS

{¶ 9}  Relator, James F. Cordell, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied his request for temporary total disability ("TTD") compensation based on a finding that he voluntarily abandoned his employment

with his employer Pallet Companies, Inc. ("employer"), and ordering the commission to find that he is entitled to that compensation.

Findings of Fact:

{¶ 10} 1. Relator sustained a work-related injury on February 16, 2012 when a third-party truck driver pulled away from the loading dock on which relator was positioned on a tow motor resulting in a fall from the dock plate to the ground. Relator's workers' compensation claim is allowed for the following conditions:

> Fracture tibia nos - closed, right; fracture shaft fibula - closed, right.

{¶ 11} 2. While at the emergency room, a post-accident drug screen was ordered, and the results were available on February 22, 2012. Relator tested positive for marijuana metabolites and opiates, specifically morphine.

{¶ 12} 3. The employer terminated relator effective February 22, 2012 for his "Violation of Company Policy[;] Failed Post Accident Drug Screen."

{¶ 13} 4. In an order mailed March 5, 2012, the Ohio Bureau of Workers' Compensation ("BWC") allowed relator's claim and granted him TTD compensation beginning February 17, 2012.

{¶ 14} 5. The employer appealed and the matter was heard before a district hearing officer ("DHO") on May 1, 2012. The DHO concluded that relator was not eligible to receive TTD compensation finding that he had violated the employer's drug-free work place policy when he tested positive for marijuana and morphine.

{¶ 15} 6. Relator appealed and the matter was heard before a staff hearing officer ("SHO") on July 2, 2012. The SHO determined that TTD compensation was payable despite the fact that relator had tested positive for marijuana and morphine after the work-related injury. The SHO stated:

> The Staff Hearing Officer notes the Employer's challenge to the payment of temporary total compensation based on the Injured Worker's termination from unemployment on 02/22/2012 due to a positive drug screen. The Staff Hearing Officer was persuaded by the Injured Worker's testimony at hearing that the urine sample taken at Wadsworth-Rittman Hospital on the date of injury was performed in an unusual manner and may have been contaminated. The Injured Worker has been submitting to, and passing, monthly urine

drug screenings for years and knows the protocol for such testing. The Injured Worker testified he did not provide his sample to sterile container opened in his presence. Rather, his sample was placed in an open, hand-held urinal and transferred out of his presence to another container. The Staff Hearing Officer finds the validity of the drug testing has been brought into question.

Pursuant to the holding in State ex rel. Pretty Products, Inc. v. Industrial Commission (1996), 77 Ohio St.3d 5, an Injured Worker who is unable to return to work at his former position of employment cannot voluntarily abandon his former position of employment. The Injured Worker was terminated on 02/22/2012, after he was disabled by the injury in this claim. Therefore, the termination does not amount to a voluntary abandonment of employment and does not preclude the payment of temporary total compensation.

{¶ 16} 7. The employer appealed on two grounds: (1) the SHO improperly relied on relator's testimony to find that the drug test was flawed, and (2) the SHO's reliance on *State ex rel. Pretty Prods. v. Indus. Comm.*, 77 Ohio St.3d 5 (1996), was inappropriate given the March 26, 2009 magistrate's decision in *State ex rel. PaySource USA, Inc. v. Indus. Comm.,* 10th Dist. No. 08AP-677 (Mar. 26, 2009) (memorandum decision), recommending that this court find that the violation of an employer's drug-free policy occurs prior to any work-related injury and constitutes proper grounds not only for terminating an employee, but for denying payment of TTD compensation as well.

{¶ 17} 8. In an order mailed July 26, 2012, the commission refused the employer's appeal.

{¶ 18} 9. The employer filed a request for reconsideration and, in an interlocutory order mailed September 22, 2012, the commission determined that the employer had presented sufficient probative evidence to warrant adjudication, vacated the July 26, 2012 SHO order, and set the matter for hearing.

{¶ 19} 10. The matter was heard before the commission on October 23, 2012. At that time, the commission determined the employer met its burden of proving that the SHO order contained a clear mistake of law by not applying this court's decision in *PaySource USA, Inc.* Thereafter, the commission applied this court's decision in *PaySource,* adopting the decision of its magistrate, and found that relator's ingestion of or

use of marijuana was the offense for which he was terminated, and that offense occurred prior to his termination on February 22, 2012. The commission discussed *PaySource* noting that this court refused TTD compensation to an injured worker who tested positive for drugs as a result of a post-accident drug screen because the court found that it was the injured worker's ingestion of drugs prior to the injury that gave rise to the injured worker's positive drug test and that the prohibited conduct could not have occurred during any period of disability. The commission distinguished the facts from *State ex. rel. Gross v. Indus. Comm.*, 115 Ohio St.3d 249, 2007-Ohio-4916 *(Gross II),* solely on grounds that relator's ingestion of marijuana was not causally related to his injury. The commission specifically found that *Gross II* was limited to situations where the work-rule violation was the cause of the injury.

{¶ 20} 11. Since then, the BWC has issued an order declaring an overpayment of TTD compensation.

{¶ 21} 12. Relator has filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 22} For the reasons that follow, it is this magistrate's decision that this court should issue a writ of mandamus, and TTD compensation should be awarded to relator.

{¶ 23} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 24} It is undisputed that voluntary abandonment of the former position of employment can preclude payment of TTD compensation. *State ex rel. Rockwell Internatl. v. Indus. Comm.* (1988), 40 Ohio St.3d 44.

{¶ 25} In *State ex rel. Watts v. Schottenstein Stores Corp.,* 68 Ohio St.3d 118 (1993), the court determined that a firing can constitute a voluntary abandonment of the former position of employment because, although discharge is not necessarily consented to, it often is a consequence of behavior that the claimant willingly undertook and may take on a voluntary character.

{¶ 26} In *State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.*, 72 Ohio St.3d 401 (1995), the Supreme Court of Ohio was asked to determine whether an employee's termination for violating work rules could be construed as a voluntary abandonment of employment that would bar the payment of TTD compensation. In that case, the employer was notified that the claimant had been medically released to return to work following a period where TTD compensation was paid. When the claimant failed to report to work for three consecutive days, he was automatically terminated for violating the employer's absentee policy as set forth in the company's employee handbook.

{¶ 27} Thereafter, the claimant requested additional TTD compensation and argued that his termination constituted an involuntary departure from employment. However, the court found it difficult to characterize as "involuntary" a termination generated by the claimant's violation of a written work rule or policy that: (1) clearly defined the prohibited conduct; (2) had been previously identified by the employer as a dischargeable offense; and (3) was known or should have been known to the employee.

{¶ 28} The principal set forth in *Louisiana-Pacific Corp.* concerning voluntary abandonment is potentially implicated any time TTD compensation is requested by a claimant who is no longer employed in a position held when the injury occurred. *Gross II* at ¶ 16 citing *State ex rel. McCoy v. Dedicated Transport, Inc.*, 97 Ohio St.3d 25, 2002-Ohio-5305, ¶ 38. Nevertheless, a voluntary departure from the former position of employment can preclude eligibility for TTD compensation only if it operates to sever the causal connection between the claimant's industrial injury and the claimant's actual wage loss. *Id.*

{¶ 29} At the same time the commission and courts were applying the principles from *Louisiana-Pacific*, courts began considering the implication of *Pretty Prods.*, and the cases which followed. *Pretty Prods.* explained that: "The timing of a claimant's separation from employment can, in some cases, eliminate the need to investigate the character of departure. For this to occur, it must be shown that the claimant was already disabled when the separation occurred." *Id.* at ¶ 7. As such, " 'a claimant can abandon a former position or remove himself or herself from the work force only if he or she has the physical capacity for employment at the time of the abandonment or removal.' " *Id.* quoting *State ex rel. Brown v. Indus. Comm.*, 68 Ohio St.3d 45, 48 (1993). *See also State ex rel. OmniSource Corp. v. Indus. Comm.*, 113 Ohio St.3d 303, 2007-Ohio-1951 (concluding that a truck driver who was already disabled when terminated for losing his driver's license as a result of a subsequent drunk driving conviction was not disqualified from TTD compensation).

{¶ 30} When the Supreme Court of Ohio applied the above principles to the facts in *Gross II*, the court noted that the employee's violation of the work rule in that case actually caused the employee's injury. In reconsidering its decision from *State ex rel. Gross v. Indus. Comm.,* 112 Ohio St.3d 65, 2006-Ohio-6500 ("Gross I"), where the voluntary-abandonment doctrine was applied to deny TTD benefits, the court clarified that "*Gross I* was not intended to expand the voluntary-abandonment doctrine." *Gross II* at ¶ 19. The Supreme Court explained that: "Until the present case, the voluntary-abandonment doctrine has been applied only in post-injury circumstances in which the claimant, by his or her own volition, severed the causal connection between the injury and loss of earnings that justified his or her [temporary total disability] benefits." *Id.* "The doctrine has never been applied to pre-injury conduct or conduct contemporaneous with the injury. *Gross I* did not intend to create such an exception." *Id.*

{¶ 31} In *State ex rel. Reitter Stucco, Inc. v. Indus. Comm.*, 117 Ohio St.3d 71, 2008-Ohio-499, the Supreme Court had the opportunity to address the two lines of cases. The Supreme Court observed that the parties considered the two cases to be mutually exclusive. The employer argued that *Louisiana-Pacific* was dispositive, while the claimant relied on *Pretty Prods.* However, the Supreme Court determined that *Pretty Prods.* clarified *Louisiana-Pacific* so that the character of an employee's departure,

voluntary or involuntary, is not the only relevant element; instead, the timing of the termination may be equally pertinent.  Id. at ¶10.  As the court explained:

> *Louisiana-Pacific* and *Pretty Prods.* may each factor into the eligibility analysis.  If the three requirements of *Louisiana-Pacific* regarding voluntary termination are not met, the employee's termination is deemed involuntary, and compensation is allowed.  If the *Louisiana-Pacific* three-part test is satisfied, however, suggesting that the termination is voluntary, there must be consideration of whether the employee was still disabled at the date of termination.

*Id.* at ¶ 11.

{¶ 32} Because the claimant in *Reitter Stucco* was medically incapable of returning to his former position of employment at the time of his termination, the court concluded that he was eligible to receive TTD compensation.  As the court explained: "[A] claimant whose departure is deemed voluntary does not surrender eligibility for temporary total disability compensation if, at the time of departure, the claimant is still temporarily and totally disabled."  Id. at ¶10.  Accordingly, even if the termination satisfies all three criteria from *Louisiana-Pacific* and is considered voluntary, the claimant's eligibility for TTD compensation remains if the claimant was still disabled at the time the termination occurred.  Id.

{¶ 33} In 2009, within three months of each other, this court released two decisions, *PaySource* and *State ex rel. Ohio Welded Blank v. Indus. Comm.*, 10th Dist. No. 08AP-772, 2009-Ohio-4646, each of which dealt with factual situations similar to those present in this case. William A. Shoemaker ("Shoemaker") and Steven Farr ("Farr") both sustained work-related injuries. Pursuant to their employers' drug-free workplace policies, both Shoemaker and Farr submitted to drug testing.  Shoemaker's test was positive for cocaine, and Farr's test was positive for marijuana.  Both Shoemaker and Farr were terminated from their employment for having violated their employers' policies, and their employers argued that their violations constituted a voluntary abandonment of their employment precluding their eligibility for TTD compensation.  In both cases, the commission awarded the employees TTD compensation, and the employers filed mandamus actions in this court.

{¶ 34} In *PaySource*, decided June 30, 2009, the record indicates that Shoemaker was "verbally notified * * * that he had tested 'positive for cocaine' and that 'under our Drug-Free workplace policy he would have to be terminated.'  The February 5, 2008 verbal notification was later memorialized in a March 14, 2008 letter."  In the SHO order under review, the SHO stated:

> Counsel for the employer indicated that the drug screen was performed as a result of the injured worker being involved in the workplace fall from the scaffold accident. The results of the drug screen apparently became available and published on 02/04/2008.  As a result, the employer fired the injured worker on 02/05/2008. Counsel for the employer indicated that the employer fired the injured worker because he tested positive for cocaine on the drug screen.
>
> The employer argues that the injured worker therefore voluntarily abandoned his former position of employment when he ingested cocaine approximately three days prior to the fifteen foot fell [sic] off of the scaffold while working.

The SHO rejected the employer's argument and stated as follows:

> The employer admits that it fired the injured worker as a result of testing positive on a drug screen.  That drug screen was performed after the injured worker had sustained his compensable workplace injury, and after the injured worker had become physically unable to return to his former position of employment in fact; the employer admits that the post accident drug screen was performed only because the injured worker had sustained an on the job injury.  The drug screen and resultant firing arose out of the compensable work injury.

Upon review, this court accepted the magistrate's argument to the contrary:

> Because it was found that the "drug screen" and the resultant job termination occurred after the industrial injury prevented claimant from returning to his former position of employment, the commission concluded that the job departure was involuntary.
>
> The commission's analysis of the timing of the termination is seriously flawed because the commission inappropriately viewed testing positive on the drug screen as the offense for which claimant was terminated.  Clearly, it was claimant's ingestion or "use" of cocaine that was the offense for which

claimant was terminated. The drug screen was only the means employed to detect the use of the illegal substance. Clearly, claimant's use of the prohibited substance occurred prior to the industrial injury, and thus the prohibited conduct could not have occurred during any period of disability resulting from the industrial injury.

Page 22 of the employee handbook states that: "Employees need to be aware that certain offenses, including but not limited to use, possession, sale of illegal drugs * * *, will normally result in immediate termination." That portion of page 22 put claimant on notice that his admitted ingestion or use of cocaine could result in job termination if the ingestion or use were ever detected by a drug screen required at the time of an industrial injury.

The magistrate further recognizes that Brosnan's March 14, 2008 letter memorializing the February 5, 2008 notification of termination does not specify that claimant was being terminated for "use." However, the letter does state that claimant was being terminated "under our Drug-Free workplace policy."

It is unreasonable under the circumstances to infer from Brosnan's letter that use of cocaine as determined by the drug screen was not the conduct that the policy prohibits and for which Omni terminated employment.

{¶ 35} As a result, this court determined that Shoemaker was not entitled to TTD compensation. However, the court never addressed the applicability of *Gross II* or its effect on the outcome.

{¶ 36} By comparison, in *Ohio Welded Blank*, decided September 8, 2009, after receiving the positive results from the drug test, the employer met with Farr and informed him that he was going to be terminated because he tested positive for marijuana. Later, the employer sent Farr a letter indicating, in part:

[O]n October 24, 2007, you tested positive for an illicit substance on a drug screen on September 28, 2007. This positive drug screen is a violation of the Company's Substance Abuse Policy and in accordance with this policy the Company is terminating your employment effective September 28, 2007.

*Id.* at 30.

{¶ 37} At the commission level, the employer argued that Farr had voluntarily abandoned his employment; however, the commission applied the rationale from *Gross II* and found that TTD compensation was payable:

> A positive marijuana metabolite level was discovered during routine post-accident testing which caused claimant to be terminated after the disability due to the injury had begun. As soon as he was physically able, claimant returned to work with a different employer. This would rebut the contention that claimant had abandoned the work force or otherwise removed himself from employment voluntarily and unrelated to the claim. The presence of a prohibited drug level was discovered subsequent to the injury and after disability from the injury existed independent of any drug policy violation. Staff Hearing Officer finds no legal precedent which would apply an abandonment of the workplace theory to pre-injury behavior, discovered after the injury, where the injury has caused disability independent of the dischargeable defense. *Pretty Products v. Industrial Commission*, (1996), 77 Ohio St.3d 5, and *State ex rel. Reitter Stucco, Inc. v. Industrial Commission*, slip Opinion no. 2008-Ohio-499-No.2007-0060-submitted Nov. 27, 2007-decided Feb. 13, 2008, are followed. Claimant was disabled due to the injury at the time of termination. The cause of the termination is unrelated to the injury claim. Since claimant was medically incapable of returning to his former position of employment at the time of his discharge, Staff Hearing Officer concludes that he is eligible to receive the temporary total disability compensation as ordered.

*Id.* at 34.

{¶ 38} Despite of the fact that the employer continued to argue that Farr ingested marijuana sometime during the week preceding his injury and obviously violated the written work rule before his injury, this court applied *Gross II* and stated:

> *Gross II* stated the voluntary abandonment doctrine had not been applied to work rule violations preceding or contemporaneous with the injury. Here even if we adopt relator's position that the date of the infraction, not the date of termination, determines application of the voluntary abandonment doctrine, *Gross II* indicates that a pre-injury infraction undetected until after the injury is not grounds for concluding claimant voluntarily abandoned his employment. Although the infraction may be grounds for terminating relator's employment, *Gross II* clarifies that it is not grounds

for concluding claimant abandoned his employment so as to preclude temporary total benefits. The result is especially compelling here, where the employer presented no evidence to suggest the injury resulted from relator's being under the influence of drugs or alcohol.

*Id.* at 20.

{¶ 39} In *PaySource*, this court departed from the principles established by the Supreme Court of Ohio. Because this court did not address the applicability of *Gross II* and its effect on the outcome, this magistrate is unable to address and/or explain the reasons why this decision is contrary to other decisions addressing the same issue. However, this court has not followed *PaySource.*

{¶ 40} In a decision rendered in September 2011, two years after both *PaySource* and *Ohio Welded Blank,* this court followed *Ohio Welded Blank* and determined that the injured worker who tested positive for marijuana during a post-accident drug test was entitled to an award of TTD compensation. In *State ex rel. Ohio Decorative Prods., Inc. v. Indus. Comm.,* 10th Dist. No. 10AP-498 (Sept. 15, 2011), Randy S. Herron sustained serious injuries when his ponytail was caught onto a rotating shaft of a grinding machine. Herron tested positive for opiates and cannabinoids, and his employer argued that his claim should be barred under R.C. 4123.54 because there was a rebuttable presumption that Herron was intoxicated or under the influence of a controlled substance, not prescribed by his physician, and the fact that he was intoxicated or under the influence of a controlled substance was the proximate cause of his injury. A DHO found that R.C. 4123.54 did not apply and determined that TTD compensation was payable.

{¶ 41} Herron's employer appealed and, at that time, conceded that the requirements of R.C. 4123.54 had not been met. However, the employer continued to argue that Herron's termination for violating the drug-free workplace policy constituted a voluntary abandonment of his employment and rendered him ineligible to receive TTD compensation. The SHO disagreed and, citing *Gross II, Pretty Prods.,* and *Reitter Stucco,* concluded that TTD compensation was payable. Despite the fact that the SHO found that the employer did establish all three requirements of *Louisiana-Pacific,* by applying *Gross II, Pretty Prods.,* and *Reitter Stucco,* the SHO concluded that Herron's pre-injury behavior did not foreclose the payment of TTD compensation.

{¶ 42} In arguing otherwise, the employer contends that *Ohio Welded Blank, Ohio Decorative Prods.,* and *State ex rel. Ohio State Univ. Cancer Research Hosp. v. Indus. Comm.,* 10th Dist. No. 09AP-1027, 2010-Ohio-3839, are in contravention of *Louisiana-Pacific* and the Supreme Court of Ohio's decision in *State ex rel. Cobb v. Indus. Comm.,* 88 Ohio St.3d 54 (2000). Relator points out that, in *Cobb,* the Supreme Court held that a post-injury termination based upon a violation of an employer's drug policy can preclude the payment of TTD compensation provided the three-prong test from *Louisiana-Pacific* is demonstrated. For the reasons that follow, the magistrate finds that relator's argument is not well-taken.

{¶ 43} First, *Ohio Welded Blank, Ohio Decorative Prods.* and *Ohio State Univ. Cancer Research Hosp.* are not in contravention of *Louisiana-Pacific.* Instead, both this court and the Supreme Court of Ohio have been very clear in explaining that *Louisiana-Pacific* and *Pretty Prods.* can both be applied in certain circumstances. As such, even where an employer demonstrates that the *Louisiana-Pacific* test has been met, the injured worker may still be entitled to receive TTD compensation. In explaining how the two lines of cases are to be applied, the Supreme Court specifically noted that both *Louisiana-Pacific* and *Pretty Prods.* may factor into the analysis. If the requirements of *Louisiana-Pacific* are met, suggesting that the termination is voluntary, the commission and courts must still consider whether the employee was disabled at the date of termination.

{¶ 44} Second, the employer's reliance on *Cobb* is misplaced. The *Cobb* case was decided seven years before the Supreme Court of Ohio rendered its decision in *Gross II* and has not been applied in these circumstances since then. As such, it appears the holding in *Cobb* has been rejected by the Supreme Court of Ohio in *Ohio Welded Blank* and *Ohio Decorative Prods.*

{¶ 45} The magistrate specifically notes that the *PaySource* case is the only case since *Gross II* was decided in which an injured worker has been denied TTD compensation because the injured worker tested positive for drugs during post-injury drug tests. However, this court did not address the applicability of *Gross II* to the facts in *PaySource.* As such, the magistrate cannot address and/or explain the reasons why the decision in *PaySource* was reached. As this magistrate noted in *Ohio Decorative Prods.,*

this court should continue to apply the law as pronounced by the Supreme Court in *Gross II.* As the Supreme Court stated, the voluntary abandonment doctrine has never been applied to violations of written work rules which precede or are contemporaneous with the injury. If ingesting marijuana actually is a violation of the written work rule, the only employees at risk for being terminated for violating this offense are employees who sustain compensable work-related injuries while working for their employer. Any other employee who also ingested marijuana at the same time will not be terminated because their "violation" will not be brought to light.

{¶ 46} The employer emphasizes that TTD compensation can only be awarded when the disability arising from the allowed conditions causes the employee to suffer a loss of wages. The employer asserts here that relator's termination from employment for violating the written work rule is the reason relator is without wages. In other words, employer asserts that the violation of the written work rule and subsequent termination break the causal connection between the disability arising from the allowed conditions and relator's lack of wages. For the reasons that follow, the magistrate disagrees.

{¶ 47} It is undisputed that relator was injured at work on February 16, 2012. Further, it is also undisputed that relator was immediately rendered temporarily totally disabled. In other words, the allowed conditions resulting from the work-related injury immediately prevented relator from working and caused him to suffer a loss of wages. But for the injury, relator would have been able to continue working. Relator asserts that it could have administered a random drug test that same day and, had relator tested positive, he would have been terminated. Therefore, the employer argues that the causal connection between the allowed conditions and the resulting loss of wages was severed.

{¶ 48} The magistrate finds that it is immaterial that relator would have been terminated if the employer had subjected him to a random drug test, which he would have failed. The employer did not subject relator to a random drug test. Here, the allowed conditions which resulted from the workplace injury rendered relator unable to return to his former position of employment and caused him to be without wages. Employers can show a break in the causal connection if they can meet the burden of proof under R.C. 4123.54 and demonstrate that an injured worker was actually impaired by the drugs at the time the injury occurred.

{¶ 49} In *State ex rel. Smith v. Superior's Brand Meats, Inc.*, 76 Ohio St.3d 408, 411 (1996), the Supreme Court of Ohio recognized the possible abuse that may occur where the termination of employment may result in the denial of TTD compensation for the injured worker and stressed that it is "imperative to carefully examine the totality of the circumstances when such a situation exists." Especially here, where there is no evidence that relator was under the influence of the drugs he ingested, the magistrate finds that, while the employer certainly could terminate relator, the commission abused its discretion when it found a voluntary abandonment and denied relator TTD compensation.

{¶ 50} This conclusion also follows the reasoning of other cases, including *Ohio State Univ. Cancer Research Hosp.* (claimant returned to modified duty and while working modified duty was terminated for his pre-injury violation of the employer's policy against harassment—TTD payable); and *State ex rel. Nick Strimbu, Inc. v. Indus. Comm.*, 106 Ohio St.3d 173, 2005-Ohio-1386 (while claimant was off from work following his work-related injury, the employer learned that, pre-injury, he had violated the employer's policy by falsifying his job application—TTD payable). Under the employer's theory, these pre-injury cases would also need to be reevaluated.

{¶ 51} Based on the foregoing, it is this magistrate's decision that this court should issue a writ of mandamus ordering the commission to vacate its order which denied relator TTD compensation and issue an order finding that relator is entitled to that compensation.

/S/ MAGISTRATE
STEPHANIE BISCA BROOKS

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).