[Cite as *State v. Tatom*, 2018-Ohio-5143.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 17AP-758 |
| v. | : | (C.P.C. No. 15CR-77) |
| Roshawn L. Tatom, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

---

D E C I S I O N

Rendered on December 20, 2018

---

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Barbara A. Farnbacher*, for appellee.

**On brief:** *James Anzelmo*, for appellant.

---

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Defendant-appellant, Roshawn L. Tatom, appeals the October 4, 2017 judgment entry of the Franklin County Court of Common Pleas convicting him, pursuant to a guilty plea, and imposing sentence. For the following reasons, we affirm.

**I. Facts and Procedural History**

{¶ 2} This matter arises out of an incident that occurred on February 13, 1996. On January 8, 2015, a Franklin County Grand Jury filed an indictment charging Tatom with two criminal counts: kidnapping, in violation of R.C. 2905.01, a felony of the first degree, and rape, in violation of R.C. 2907.02, a felony of the first degree. On May 31, 2016, Tatom filed a motion pursuant to Crim.R. 12(C) to dismiss the matter based on preindictment delay. On August 29, 2016, plaintiff-appellee, State of Ohio, filed a memorandum contra

Tatom's motion to dismiss. On February 3, 2017, the state filed a supplemental memorandum contra Tatom's motion to dismiss.

{¶ 3} On July 24, 2017, the trial court held a hearing at which Tatom entered a plea of guilty to felonious assault, in violation of R.C. 2903.11, a felony of the second degree. At the plea hearing, the state offered the factual basis for the plea. According to the facts set forth at the plea hearing, on February 13, 1996, the victim, A.D., exited a bus at the intersection of Obetz Road and Parsons Avenue in Columbus. As she walked across a parking lot toward her residence, she was approached from behind by a man who choked her with her scarf. The man kicked A.D. and forced her to the ground, at which point she lost consciousness.

{¶ 4} When A.D. regained consciousness, she found herself in a field. Her stockings were torn and her panties had been removed. A.D. had no recollection of having been sexually assaulted, but believed she had been. A.D. went to a nearby residence and called 911. A.D. was taken to a hospital where she underwent a sexual assault examination. The following day, February 14, 1996, a condom was recovered at the scene. When the condom was tested in 2014, the DNA recovered from the inside of the condom matched that of Tatom. Tatom stipulated to the factual basis of the plea with regard to A.D.'s assault.

{¶ 5} On July 24, 2017, the trial court filed an entry, which was signed by Tatom and his attorney, reflecting Tatom's guilty plea. On September 21, 2017, the trial court held a sentencing hearing, at which the trial court imposed a six-year term of imprisonment. On October 4, 2017, the trial court filed a judgment entry reflecting Tatom's conviction and sentence.

## II. Assignments of Error

{¶ 6} Tatom appeals and assigns the following three assignments of error for our review:

[I.] THE TRIAL COURT IMPROPERLY SENTENCED MR. TATOM UNDER CURRENT LAW INSTEAD OF THE AVAILABLE SENTENCES AT THE TIME OF HIS CRIME.

[II.] THE RETROACTIVE APPLICATION OF OHIO'S STATUTE DEFINING "CHILD" CONSTITUTES AN IMPERMISSIBLE EX POST FACTO LAW.

[III.] APPELLANT RECEIVED INEFFECTIVE ASSISTANCE
OF COUNSEL.

## III.  First and Second Assignments of Error

{¶ 7}   In his first assignment of error, Tatom argues the trial court improperly applied current sentencing law instead of the law in effect at the time of the offense.  In his second assignment of error, Tatom asserts the retroactive application of the statutory definition of "child" violates the constitutional prohibition on ex post facto laws.  As Tatom concedes, because he failed to raise these issues in the trial court, he has forfeited all but plain error.  *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, ¶ 15-16. Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."  *See State v. Lindsey*, 87 Ohio St.3d 479, 482 (2000).  "A showing of plain error requires 'a reasonable *probability* that the error resulted in prejudice.' "  (Emphasis sic.)  *State v. Myers*, ___ Ohio St.3d ___, 2018-Ohio-1903, ¶ 130, quoting *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, ¶ 22.

## A. Whether Trial Court Erred by Applying Current Sentencing Law

{¶ 8}   We first consider Tatom's argument that the trial court erred by applying current sentencing law instead of the law in effect at the time the offense occurred.  Specifically, Tatom argues the sentencing laws at the time of the offense provided for a potentially lower penalty and, therefore, should have been applied.

{¶ 9}   In cases of statutory interpretation, "our paramount concern is the legislative intent in enacting the statute." *State ex rel. Steele v. Morrissey*, 103 Ohio St.3d 355, 2004-Ohio-4960, ¶ 21, citing *State ex rel. United States Steel Corp. v. Zaleski*, 98 Ohio St.3d 395, 2003-Ohio-1630, ¶ 12  "In determining this intent, we first review the statutory language, reading words and phrases in context and construing them according to the rules of grammar and common usage." *Id.*, citing *State ex rel. Rose v. Lorain Cty. Bd. of Elections*, 90 Ohio St.3d 229, 231 (2000), and R.C. 1.42.  However, "when legislative intent is unclear, we invoke statutory-construction principles." *State v. Thomas*, 148 Ohio St.3d 248, 2016-Ohio-5567, ¶ 7, citing *Cline v. Ohio Bur. of Motor Vehicles*, 61 Ohio St.3d 93, 97 (1991).

{¶ 10}  R.C. 1.58(B) provides that "[i]f the penalty, forfeiture, or punishment for any offense is reduced by a reenactment or amendment of a statute, the penalty, forfeiture, or punishment, if not already imposed, shall be imposed according to the statute as amended."

R.C. 1.52(A) provides that "[i]f statutes enacted at the same or different sessions of the legislature are irreconcilable, the statute latest in date of enactment prevails."

{¶ 11} Under the sentencing scheme in effect at the time of the commission of the offense, felonious assault was classified as an aggravated felony of the second degree, which was punishable by a minimum prison term of 3, 4, 5, 6, 7, or 8 years, and a maximum prison term of 15 years.[1] *See* former R.C. 2903.11; former R.C. 2929.11. Since that time, Ohio's felony sentencing scheme has been significantly altered through legislative enactments.

{¶ 12} The General Assembly made the first major change with the enactment of 1996 Am.Sub.S.B. No. 2 ("S.B. 2"), which became effective on July 1, 1996. The purpose of S.B. 2 was to create "truth in sentencing," by "eliminating indefinite sentences and replacing parole with postrelease control." *Thomas* at ¶ 10. Next, the General Assembly enacted 2011 Am.Sub.H.B. No. 86 ("H.B. 86"), which became effective on September 30, 2011. The purpose of H.B. 86 was "to reduce the state's prison population and to save the associated costs of incarceration by diverting certain offenders from prison and by shortening the terms of other offenders sentenced to prison." *State v. Taylor*, 138 Ohio St.3d 194, 2014-Ohio-460, ¶ 17, citing Ohio Legislative Service Commission, Fiscal Note & Local Impact Statement to H.B. 86 at 3 (Sept. 30, 2011).[2] Under the sentencing scheme created by H.B. 86, felonious assault is classified as a felony of the second degree, which is punishable by a prison term of 2, 3, 4, 5, 6, 7, or 8 years. R.C. 2903.11; 2929.14. The trial court sentenced Tatom to a prison term of six years.

{¶ 13} The Supreme Court of Ohio, in *Thomas*, recently addressed the impact of H.B. 86 on defendants who committed offenses prior to its effective date. In that case, the offenses giving rise to the defendant's conviction occurred in 1993, but the defendant was not convicted until 2014, after the effective date of H.B. 86. Under the sentencing scheme at the time of the offense, the defendant was subject to potential prison sentences ranging from 5 to 25 years, to 10 to 25 years. However, under the sentencing scheme put in place

---

[1] We note Tatom incorrectly asserts that under the law in effect at the time of the offense "a Felonious Assault would have been subject to a 2, 3, 4, or 5 to 15 year sentence." (Appellant's Brief at 4.)

[2] We note that the General Assembly has amended R.C. 2929.14, the felony sentencing statute in effect at the time of sentencing, several times since the enactment of H.B. 86. However, such amendments did not alter the underlying sentencing scheme enacted by H.B. 86, and are not relevant to the disposition of the instant matter.

by H.B. 86, the defendant was subject to potential prison sentences of 3, 4, 5, 6, 7, 8, 9, 10, or 11 years. The trial court applied the sentencing scheme in effect at the time of the offenses, imposing a prison term of 8 to 25 years on the count of rape, and a prison term of 8 to 25 years on the count of kidnapping.

{¶ 14} The Supreme Court noted "the uncodified law of H.B. 86 specifies that its sentencing provisions apply to any unsentenced offender whose potential sentence would be reduced under H.B. 86, regardless of when the offense was committed." *Thomas* at ¶ 16. Because the amendments to R.C. 2929.14(A) in H.B. 86 reduced the defendant's potential sentences for his offenses, the court found that H.B. 86 was applicable to the defendant under its own terms and R.C. 1.58. Therefore, the court concluded that the defendant "must be sentenced under the reduced-sentence provisions of H.B. 86." *Id.* at ¶ 17.

{¶ 15} Tatom acknowledges that the Supreme Court in *Thomas* previously considered and rejected an argument similar to his own. Nevertheless, Tatom argues *Thomas* is inapposite because "Ohio's new sentencing scheme does not actually reduce the penalty for his crime." (Appellant's Brief at 5.) In support of this argument, Tatom points to the potential to petition for parole under the sentencing scheme in effect at the time of the offense. Tatom argues that "[e]ven pessimistically assuming only a one-quarter reduction and 'maximum-minimum' sentence [he] would have been petitioning for parole in roughly four years under the old sentencing scheme." (Appellant's Brief at 5.)

{¶ 16} In *Thomas*, the court compared the "ranges" of "potential sentences" when determining the defendant was entitled to receive the benefit of a reduced sentence under H.B. 86. *Thomas* at ¶ 15. The court did not specifically discuss the potential for parole pursuant to the sentencing scheme in effect at the time Thomas committed the offense. Nevertheless, Tatom's argument that he could have been released in less time by seeking parole under the prior sentencing scheme is not determinative of the issue at hand because it is merely speculative and does not address whether the range of potential sentences to which he was subject was less under current law than the law at the time of the offense. Here, the amendments to R.C. 2929.14(A) in H.B. 86 reduced both the maximum and minimum potential sentence for Tatom's offense. Thus, pursuant to R.C. 1.58(B) and the

provisions of H.B. 86, we cannot say the trial court plainly erred in applying the reduced sentence provisions of H.B. 86. *Thomas* at ¶ 17.

{¶ 17} Accordingly, we overrule Tatom's first assignment of error.

**B. Whether Application of Statute Violated Ex Post Facto Clause**

{¶ 18} Next, we turn to Tatom's argument in his second assignment of error that it was plain error for the trial court to retain jurisdiction although Tatom was under 18 years of age at the time of the offense. Specifically, Tatom contends that statutory amendments to the definition of "child," when retroactively applied to him, are ex post facto laws prohibited by Article I, Section 10, of the United States Constitution.

{¶ 19} The Ex Post Facto Clause of the United States Constitution "incorporated 'a term of art with an established meaning at the time of the framing of the Constitution.' " *California Dept. of Corr. v. Morales*, 514 U.S. 499, 504 (1995), quoting *Collins v. Youngblood*, 497 U.S. 37, 41 (1990). " 'Although the Latin phrase "*ex post facto*" literally encompasses any law passed "after the fact," it has long been recognized by [the United States Supreme Court] that the constitutional prohibition on *ex post facto* laws applies only to penal statutes which disadvantage the offender affected by them.' " *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, ¶ 21, quoting *Collins* at 41.

{¶ 20} Regarding ex post facto laws, the Supreme Court of the United States has stated:

> It is settled, by decisions of this Court so well known that their citation may be dispensed with, that any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as *ex post facto*.

*Beazell v. Ohio*, 269 U.S. 167, 169-70 (1925). In other words, the Ex Post Facto Clause provides that "[l]egislatures may not retroactively alter the definition of crimes or increase the punishment for criminal acts." *Collins* at 43.

{¶ 21} In *Walls*, the Supreme Court of Ohio examined 1997 amendments to R.C. Chapter 2151, the statutory scheme providing for juvenile court jurisdiction. *See* former R.C. 2151.011(B)(6)(c) and 2151.23(I). The court summarized the changes as "effectively

remov[ing] anyone over 21 years of age from juvenile-court jurisdiction, regardless of the date on which the person allegedly committed the offense." *Walls* at ¶ 14. Furthermore, the court stated that "the statutory amendments made the age of the offender *upon apprehension* the touchstone of determining juvenile-court jurisdiction without regard to whether the alleged offense occurred prior to the amendments' effective date." (Emphasis sic.) *Id.* Based on these changes, the court concluded the "General Assembly intended that the 1997 amendments to R.C. Chapter 2151 apply retrospectively." *Id.*

{¶ 22} In determining whether the amendments to the juvenile law applied in Walls's case constituted an ex post facto violation, the court stated that it was necessary to show that the amendments actually " 'produced a sufficient risk of increasing the measure of punishment attached to' " the particular crime, and that a " 'speculative and attenuated' possibility that the statutory change has increased the measure of punishment will not constitute an ex post facto violation." *Walls* at ¶ 30, quoting *Morales* at 509. The court found that "[w]hile [the defendant] perhaps remained eligible for retention within the jurisdiction of the juvenile court under a technical reading of the old statutes, the practical reality is that [the defendant] had virtually no chance of being kept in the juvenile system." *Id.* at ¶ 31. The court noted Walls's "mature age" and stated that the former bindover statute did not contemplate treatment of a 29-year-old adult within the juvenile justice system. *Id.* at ¶ 40-41. The court stated that "[a]ny bindover hearing under the [statute in effect at the time of the offense] would have been simply a procedural step in the process of transferring [the defendant] for prosecution as an adult." *Id.* at ¶ 41. Therefore, because "application of the amended statutes did not increase his available punishment in any manner other than a speculative and attenuated one," the court concluded the "change in the measure of punishment is not enough to constitute an ex post facto violation." *Id.*

{¶ 23} Tatom acknowledges the Supreme Court of Ohio in *Walls* previously considered and rejected an argument similar to his own. Nevertheless, Tatom argues that "removing the protections of Ohio's juvenile system[] constitutes a change in the law that increases the possible punishment and runs afoul of the Ex Post Facto Clause and asks this court to consider such a holding." (Appellant's Brief at 7.) Tatom argues that although "bind-over was a risk" at the time of the offense, "it was not mandatory." (Appellant's Brief at 7.)

{¶ 24} As an intermediate appellate court, we are bound to follow precedent set by the Supreme Court of Ohio and we cannot issue a decision in conflict with a decision of the Supreme Court that has not been reversed or overruled. *Three-C Body Shops, Inc. v. Nationwide Mut. Fire Ins. Co.*, 10th Dist. No. 16AP-748, 2017-Ohio-1462, ¶ 31; *State ex rel. Cordell v. Pallet Cos., Inc.*, 10th Dist. No. 13AP-1017, 2014-Ohio-5561, ¶ 7; *Wagner v. Ohio State Univ. Med. Ctr.*, 10th Dist. No. 12AP-399, 2013-Ohio-2451, ¶ 102 (finding that court of appeals cannot issue a decision in conflict with a decision of the Supreme Court of Ohio that has not been reversed or overruled). We find *Walls* to be dispositive of the issue raised by Tatom.

{¶ 25} The date of the offense in this case was February 13, 1996. On January 8, 2015, when Tatom was 35 years old, the indictment was filed. Tatom's bindover may not have been mandatory, nevertheless, as in *Walls*, "application of the amended statutes did not increase [Tatom's] available punishment in any manner other than a speculative and attenuated one." *Walls* at ¶ 41. Therefore, we cannot agree with Tatom that the trial court committed error, let alone plain error, by retaining jurisdiction.

{¶ 26} Accordingly, we overrule Tatom's second assignment of error.

## IV. Third Assignment of Error

{¶ 27} In his third assignment of error, Tatom asserts his trial counsel was ineffective for failing to raise the arguments contained in the first and second assignments of error.

{¶ 28} A convicted defendant alleging ineffective assistance of counsel must demonstrate that: (1) counsel's performance was so deficient that he or she was not functioning as the counsel guaranteed under the Sixth Amendment to the United States Constitution, and (2) counsel's errors prejudiced defendant, depriving him or her of a trial whose result is reliable. *Strickland v. Washington*, 466 U.S. 668 (1984); *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. "To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Bradley* at paragraph three of the syllabus. "Judicial scrutiny of counsel's performance must be highly deferential [and] [b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland* at 689; *Bradley* at 141.

{¶ 29} Tatom fails to demonstrate error under the *Strickland* test. In our analysis of Tatom's first and second assignments of error, we found that under established precedent, we could not find the challenged conduct constituted plain error. Furthermore, given the established precedent in *Thomas* and *Walls*, there was not a reasonable probability that the result of the trial would have been different but for counsel's failure to raise the issues. *See State v. Brown*, 98 Ohio St.3d 121, 2002-Ohio-7040, ¶ 20 (finding counsel's failure to raise argument did not provide reasonable probability of different outcome given the existence of well-established precedent to the contrary). Therefore, we conclude that Tatom has failed to demonstrate he was denied effective assistance of counsel.

{¶ 30} Accordingly, we overrule Tatom's third assignment of error.

## V. Conclusion

{¶ 31} Having overruled Tatom's three assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

TYACK and SADLER, JJ., concur.