[This opinion has been published in *Ohio Official Reports* at 88 Ohio St.3d 54.]

THE STATE EX REL. COBB, APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO, APPELLEE.

[Cite as *State ex rel. Cobb v. Indus. Comm*., 2000-Ohio-273.]

*Workers' compensation—Application for further temporary total disability compensation denied by Industrial Commission—Claimant's illegal drug use in violation of employer's written company policy constitutes a voluntary termination of employment rendering claimant ineligible to receive temporary total disability compensation—Court of appeals' judgment denying writ of mandamus affirmed.*

(No. 98-1897—Submitted January 26, 2000—Decided February 23, 2000.)

APPEAL from the Court of Appeals for Franklin County, No. 97APD08-995.

————————————

{¶ 1} Appellant-claimant Walter L. Cobb, Jr.'s workers' compensation claim was allowed as a result of an injury he sustained while in the course of and arising from his employment with Organic Waste Technologies ("OWT"). Shortly after the injury, claimant began receiving temporary total disability compensation ("TTD").

{¶ 2} In 1996, claimant took a company physical and tested positive for illegal drug use. The written company drug policy in effect at that time read:

"**Drug Free Work Place**

"The Company is committed to maintaining a drug free work place. Drug and alcohol substance abuse poses a serious threat to the safety and welfare of all employees of OWT, not just the user, and to the efficiency and productivity of which all our jobs depend. The purpose of this policy is to ensure a safe work environment, as well as to ensure compliance with federal[,] state, and local laws.

"Definitions

"*Drug—any drug or drug substance*:

"the use, possession, manufacture or sale of which is illegal * * *.

" * * *

"*Under the Influence of Drugs*—having consumed any drug or drug substance as evidence[d] by * * * or the presence of any drug residue in a bodily fluid.

" * * *

"It is a strict violation of Company policy and procedure for any employee to:

"Report to work or attempt to work under the influence of alcohol, drugs or drug substances.

" * * *

"Use, possess, trade, manufacture, attempt to sell, or sell or purchase drugs or drug substances on Company premises or job sites * * *.

"Engage in any illegal on or off-the-job drug or alcohol-related activities which adversely affect job performance or which adversely affect the Company's reputation.

"*VIOLATION OF ANY OF THE ABOVE RULES MAY RESULT IN DISCIPLINE, WHICH MAY INCLUDE DISCHARGE.*"

{¶ 3} On September 27, 1996, claimant was fired for violating OWT's drug policy. Claimant's later attempt at reinstating TTD was denied by appellee Industrial Commission of Ohio:

"The case of [*State ex rel*.] *Rockwell Internatl. v. Indus. Comm*. (1988), 40 Ohio St.3d 44 [531 N.E.2d 678], establishes that an employee's voluntary departure from employment precludes temporary total disability compensation. In [*State ex rel*.] *Louisiana-Pacific Corp. v. Indus. Comm*. (1995), 72 Ohio St.3d 401 [650 N.E.2d 469], the Supreme Court held that a termination of an employee is deemed

to be voluntary if it [was] generated by an employee's ' * * * violation of a written work rule or policy that (1) clearly defined the prohibited conduct, (2) had been previously identified by the employer as a dischargeable offense, and (3) was known or should have been known to the employee.'

"At hearing, the employer filed a copy of its policy entitled 'Drug Free Work Place.' The relevant portions are set forth as follows:

" * * *

"The claimant's awareness of the employer's drug policy is confirmed by his statement that he believed that he could be suspended if he tested positive for illegal drugs. It was his impression that thirty days after his suspension, he would be given another drug test, the outcome of which would determine his ultimate employment status. Although neither the employer's current nor preceding policy statements refer to a re-testing after thirty days, it is clear from the claimant's own admission that he was aware that his use of drugs could lead to termination. In this respect, the three prongs of the test set forth in the *Louisiana-Pacific Corp*. case were fulfilled.

"Based upon the foregoing, it is found that the claimant's action of testing positive for drugs was a violation of a written company policy, and that his employment was terminated as a result of such testing, and that he was aware of the ramifications of his actions. It, therefore, is found that the claimant's actions constitute a voluntary termination of his employment, thereby rendering him ineligible to receive temporary total compensation as of 9-27-96, the date of his termination."

{¶ 4} Claimant filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission abused its discretion in denying him further TTD. The court of appeals disagreed and denied the writ.

{¶ 5} This cause is now before this court upon an appeal as of right.

_____

*Law Office of Thomas Tootle* and *Thomas Tootle*, for appellant.

*Betty D. Montgomery*, Attorney General, and *William J. McDonald*, Assistant Attorney General, for appellee.

_____

**Per Curiam.**

**{¶ 6}** Voluntary abandonment of the former position of employment can preclude temporary total disability compensation. *State ex rel. Rockwell Internatl. v. Indus. Comm.* (1988), 40 Ohio St.3d 44, 531 N.E.2d 678. "Firing can constitute a voluntary abandonment of the former position of employment. Although not generally consented to, discharge, like incarceration, is often a consequence of behavior that the claimant willingly undertook, and may thus take on a voluntary character." *State ex rel. Watts v. Schottenstein Stores Corp.* (1993), 68 Ohio St.3d 118, 121, 623 N.E.2d 1202, 1204.

**{¶ 7}** We elaborated on *Watts* in *State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.* (1995), 72 Ohio St.3d 401, 403, 650 N.E.2d 469, 471-472, where we characterized as "voluntary" a firing "generated by the claimant's violation of a written work rule or policy that (1) clearly defined the prohibited conduct, (2) had been previously identified by the employer as a dischargeable offense, and (3) was known or should have been known to the employee."

**{¶ 8}** In this case, OWT's drug-use policy clearly defined the prohibited conduct. It also identified violation of that conduct as a potentially dischargeable offense of which claimant was admittedly aware. Claimant attempts to distinguish his situation from that in *Louisiana-Pacific* by asserting that here termination was optional rather than mandatory. This is a distinction without consequence. Claimant's inability to predict with certainty which sanction would be imposed is immaterial so long as he knew that termination was an option. Equally important, the employer's choice of sanctions does not eliminate the element of voluntariness that claimant exercised when he chose to use illegal drugs.

**{¶ 9}** Claimant last argues that to uphold the commission is to encourage employers to fire employees as a means of avoiding the employers' compensation obligations. *Louisiana-Pacific*, however, responds to this concern by setting forth criteria that guard against firings without cause for the purpose of evading compensation responsibilities. Claimant's firing in this case was not without cause and could have been avoided by a decision to refrain from drug use.

**{¶ 10}** The judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

_____