DECISION
{¶ 1} Relator, Joan L. Watkins, has filed this original action in mandamus requesting this court to issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her temporary total disability compensation beginning April 23, 2001, on the grounds that she voluntarily abandoned her employment and to enter an order granting said compensation.
 {¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate, who issued a decision, including findings of fact and conclusions of law. (See Appendix A.) The magistrate concluded that the commission abused its discretion in its analysis of relator's application and that this court should grant a limited writ of mandamus returning this matter to the commission for an appropriate determination of the issue of voluntary abandonment.
 {¶ 3} Respondent Powerlasers Corporation filed objections to the decision of the magistrate arguing that the magistrate erred in finding that the commission erred in its reliance upon State ex rel. Louisiana-Pacific Corp. v. Indus.Comm. (1995), 72 Ohio St.3d 401, in finding the commission's order deficient under State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203, in finding this mandamus action ripe for judicial review and in finding that a full writ should issue.
 {¶ 4} Preliminarily we note that the analysis contained in the staff hearing officer's ("SHO") order of July 2001 quoted in the magistrate's decision at paragraph 19 contains erroneous dates. These errors compound the confusion in the analysis of the issue of voluntary abandonment noted by the magistrate that necessitate a return of the matter to the commission for an appropriate determination of that issue.
 {¶ 5} We agree with the magistrate that the analysis contained in the SHO's order fails to address the critical time period around the issue of voluntary abandonment, namely April 23, 2001 through April 25, 2001, and that the commission must reconsider this issue and enter a new order that complies with the requirements of Noll, supra.
 {¶ 6} As to respondent Powerlasers Corporation's contention that this matter should be stayed during the pendency of its appeal of the allowance of the claim for right lateral epicondylitis to the court of common pleas, we agree with relator that R.C. 4123.512(H) addresses that argument: "An appeal from an order issued under division (E) of section4123.511 of the Revised Code or any action filed in court in which an award of compensation has been made shall not stay the payment of compensation under the award or payment of compensation for subsequent periods of total disability during the pendency of the appeal."
 {¶ 7} Finally, as to respondent Powerlasers Corporation's last objection to the recommendation of a full writ, we note that the magistrate is recommending the issuance of only a limited writ. Respondent Powerlasers Corporation's objections are, therefore, overruled.
 {¶ 8} Following independent review pursuant to Civ.R. 53, we find that the magistrate has properly determined the pertinent facts and applied the salient law to them. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with that decision, we issue a limited writ ordering respondent commission to vacate the July 12, 2001 order of the SHO to the extent that relevant dates contained therein are erroneous and to the extent that it determines that relator voluntarily abandoned her employment and on that basis denies temporary total disability compensation. We further order respondent commission to enter an amended order consistent with this decision that appropriately determines the voluntary abandonment issue and either grants or denies relator's request for temporary total disability compensation.
Objections overruled; limited writ granted.
BROWN and McCORMAC, JJ., concur.
McCORMAC, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
 IN MANDAMUS {¶ 9} In this original action, relator, Joan L. Watkins, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her temporary total disability ("TTD") compensation beginning April 23, 2001, on grounds that she voluntarily abandoned her employment, and to enter an order granting said compensation.
 {¶ 10} Findings of Fact:
 {¶ 11} 1. Relator began her employment at Powerlasers Corporation ("Powerlasers") in December 1998. She was often assigned to the "RS Weld Cell" area where she and a co-worker would inspect the steel rails exiting a welding machine. This job would require her to lift the rail for inspection. It involved the repetitive use of her arms.
 {¶ 12} 2. On February 20, 2001, relator saw Patricia Smethurst, M.D., who diagnosed right lateral epicondylitis and prescribed some medication. One week later, relator again saw Dr. Smethurst who then placed her on restrictions of "no repetitive bending of right arm, no lifting more than 5 pounds with right arm." Powerlasers honored the restrictions and placed relator on light duty work.
 {¶ 13} 3. On March 21, 2001, relator was initially evaluated by orthopedic specialist Barry J. Collins, D.O., who confirmed the diagnosis of lateral epicondylitis, right elbow. Dr. Collins wrote:
 {¶ 14} "* * * I also gave her a restriction of no repetitive activities with the right arm or hand, no power gripping and no power tools. This is going to be in effect for approximately the next month. * * *"
 {¶ 15} 4. On March 23, 2001, the Ohio Bureau of Workers' Compensation ("bureau") issued an order denying relator's application for workers' compensation benefits. Powerlasers, a self-insured employer, had refused to certify the claim. Relator administratively appealed the bureau's order.
 {¶ 16} 5. On April 6, 2001, relator called Dr. Collins' office and requested that her restrictions be revised. Dr. Collins' physician's assistant restricted relator to left handed work only. Dr. Collins reported that Powerlasers did place relator on left handed work only.
 {¶ 17} 6. On April 18, 2001, relator again called Dr. Collins' office. Dr. Collins reported that relator requested that she be taken off work, but she was told "to try and hold out until April 23, 2001," her next appointment date.
 {¶ 18} 7. On April 20, 2001, relator again called Dr. Collins' office for an excuse to be off work from Wednesday, April 18, 2001 through Friday, April 20, 2001. Dr. Collins' office then excused relator from work for the dates she requested.
 {¶ 19} 8. On April 23, 2001, relator returned to see Dr. Collins. Dr. Collins wrote: "[t]here is mild to moderate tenderness over the lateral epicondyle with palpation." He also wrote that relator would return to work on April 25, 2001, with the following restrictions: "strict L[eft] handed jobs only[,] no R[ight] hand/arm work [for] 6 weeks."
 {¶ 20} 9. On Wednesday, April 25, 2001, relator reported for work at Powerlasers. According to a report from a co-worker, as she was preparing to report for work that morning, relator stated: "[i]f they've got me cleaning or painting, I'm leaving. I'm tired of this bull-shit!"
 {¶ 21} 10. According to a written statement from relator's supervisor, Greg Ryan, after relator discovered that she was scheduled to paint, she told Ryan that "she couldn't paint all day because it would hurt her good arm." Ryan then informed relator that her job options for that day were either painting, cleaning, or sorting gloves. According to Ryan's written statement, relator replied that she "wasn't going to do that and even begin to mess up her good arm and that she was going to go home." According to Ryan, relator stated that Kim (Powerlasers' human resources director) "would just have to do whatever Kim needed to do about this."
 {¶ 22} 11. Relator did not return to work or call in to work on Thursday, April 26, 2001.
 {¶ 23} 12. On April 27, 2001, according to a Powerlasers memorandum, relator called in at 9:30 a.m., and Kim took the call. According to the memorandum, relator "asked Kim is she had anything else for her to do besides the work she was doing." Kim then put relator on hold and brought another person (Jim Hurley) into the human resources office. The Powerlasers memorandum continues:
 {¶ 24} "Kim asked her to explain again what she was saying. Joan said she told Greg that when she talked to the doctor, the only way to take her off of light duty would be to file another claim for her left arm hurting. She asked again if we had any other work besides the painting and scrubbing. * * * Kim replied that first of all, she was to return to work on Wednesday, April 25, 2001 and she left, refusing to work. Kim said that we took that as a voluntary quit. Joan replied that she told Greg she was not quitting and to get with `you guys' to see if there was anything she could do. Kim said that we had work restrictions for her, we had to follow those, she walked off the job, and we took that as a voluntary quit. Joan said, `So, you're terminating me?' Kim and Jim replied no, that's not what happened. Kim explained that what she did was insubordination. Joan said she wanted to come in and get her paycheck. Kim asked her to bring in her uniforms at that time. Joan said she would be down to pick up her paycheck. They ended the phone call."
 {¶ 25} 13. According to a Powerlasers memorandum dated April 30, 2001:
 {¶ 26} "Joan came in to pick up her final paycheck and to drop off her uniforms. * * * Kim gave Joan her final paycheck along with a letter, letting her know she has [sic] voluntarily resigned on Wednesday, April 25."
 {¶ 27} 14. On May 17, 2001, Dr. Collins completed a C-84 certifying temporary total disability beginning April 23, 2001, to an estimated return-to-work date of June 4, 2001.
 {¶ 28} 15. Relator's administrative appeal from the March 23, 2001 bureau's order was heard by a district hearing officer ("DHO") on June 1, 2001. Thereafter, the DHO issued an order vacating the bureau's order and allowed the claim for "right lateral epicondylitis." The DHO's order further states:
 {¶ 29} "Claimant was restricted to one arm duty, which the employer provided. She subsequently refused to perform her light duty work, but had no restrictions that kept her from her light duty position.
 {¶ 30} "Temporary total disability from 04/23/2001 forward is therefore denied, due to voluntary abandonment."
 {¶ 31} 16. Relator and Powerlasers administratively appealed from the DHO's order of June 1, 2001.
 {¶ 32} 17. On June 30, 2001, Paul J. Eby, M.D., who had previously examined relator on behalf of Powerlasers on May 9, 2001, issued an addendum report regarding a 19 minute videotape he had reviewed. The videotape demonstrated two inspection type jobs that relator had performed for Powerlasers. Dr. Eby wrote:
 {¶ 33} "* * * [I]t continues to be my opinion, based upon the ergonomic analysis above, that Ms. Watkins' job in the RS Weld Cell does not put a worker at increased risk for distal upper extremity disorders. * * *"
 {¶ 34} 18. On June 25, 2001, Dr. Collins wrote:
 {¶ 35} "* * * I do believe that her lateral epicondylitis was directly related to her activities at work[.] * * *
 {¶ 36} "* * *
 {¶ 37} "* * * On April 23, 2001, the patient was seen by myself and I noted that she had significant improvement in the lateral epicondylitis and I did send her to work with restrictions of left handed work only. * * * [H]er only complete disability was for the days of April 18, 2001 through April 23, 2001."
 {¶ 38} 19. On July 12, 2001, the administrative appeals from the DHO's order of June 1, 2001 were heard by a staff hearing officer ("SHO") who then issued an order stating that the DHO's order was being modified. The SHO's order states:
 {¶ 39} "The claimant's work-place duties at Power Lasers [sic] Corporation [were to] forcefully grasp large blanks of sheet-metal and maneuver them with an exertion that was `somewhat hard' (per 06/30/2001 report of Paul J. Eby, M.D.[)]. This required flexion, extension, and pronation of her arms. The claimant developed pain in her right arm and elbow due to the aforesaid duties. She then sought medical treatment with Patricia Snethurst [sic], M.D., on 02/20/2001. Doctor Snethurst [sic] diagnosed right lateral epicondylitis and then referred her to an orthopedic specialist, Barry J. Collings [sic], D.O. Doctor Collins confirmed the diagnosis of right lateral epicondylitis and related it to claimant's repetitive work activity.
 {¶ 40} "Therefore it is the order of this Staff Hearing Officer that this claim is allowed for right lateral epicondylitis (726.32).
 {¶ 41} "This order is based on the 04/25/2001 report of Patricia Snethurst [sic], M.D. and the 06/25/2001 report of Barry J. Collins, D.O.
 {¶ 42} "It is the finding of this Staff Hearing Officer that the claimant was unable to return to her former position of employment, due to medical restrictions which were necessary due to the residuals of the allowed right lateral epicondylitis. However, the employer made light duty work available to the claimant and the claimant was able to perform that light duty work through April 4, 2001. The claimant then called her attending orthopedic specialist, Barry J. Collins, D.O., on April 6, 2000 [sic] asking to have her restrictions revised. Doctor Collins then modified her restriction to left-handed work, only. The employer continued to make light-duty work available and the claimant continued to work at light-duty through 04/17/2001. The claimant left work on 04/18/2001, without excuse, and called Doctor Collins office. She requested that Doctor Collins take her off of work completely. She was told, at that time, `that she should try to continue working until her next appointment on 04/12/2001 [sic].['] The claimant did not follow Doctor Collins' advice and did not attempt to return to light-duty work.
 {¶ 43} "Therefore, the employer considered the claimant's absence to [b]e a `voluntary quit', pursuant to their written policy.
 {¶ 44} "Therefore, it is the finding of this Staff Hearing Officer that the claimant's separation from employment was a voluntary departure from employment which precludes the award of temporary total disability compensation, pursuant to the Supreme Court's holding in State ex rel. Louisiana — Pacific v. Industrial Commission (1995),72 Ohio St.3d 401.
 {¶ 45} "Therefore, claimant's request for the payment of temporary total disability compensation from 04/23/2001 through 07/12/2001 is hereby DENIED.
 {¶ 46} "The remainder of the District Hearing Officer's order of 06/01/2001 is affirmed in all other respects." (Emphasis sic.)
 {¶ 47} 20. Both relator and Powerlasers sought to administratively appeal the SHO's order of July 12, 2001 to the three-member commission. However, in August 2001, the commission refused to hear the appeals.
 {¶ 48} 21. On March 25, 2002, relator, Joan L. Watkins, filed this mandamus action.
 {¶ 49} Conclusions of Law:
 {¶ 50} The main issue is whether the commission misplaced its reliance upon State ex rel. Louisiana-Pacific Corp. v. Indus. Comm. (1995), 72 Ohio St.3d 401, in determining that relator voluntarily abandoned her employment at Powerlasers. Finding that the commission did misplace its reliance upon Louisiana-Pacific, it is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 51} Historically, this court first held that, where the employee has taken action that would preclude his returning to his former position of employment, even if he were able to do so, he is not entitled to continued TTD benefits since it is his own action, rather than the industrial injury, which prevents his returning to his former position of employment. State ex rel. Jones Laughlin Steel Corp. v. Indus. Comm. (1985), 29 Ohio App.3d 145. The Jones Laughlin rationale was adopted by the Supreme Court of Ohio in State ex rel. Ashcraft v. Indus. Comm. (1987), 34 Ohio St.3d 42, wherein the court recognized a "two-part test" to determine whether an injury qualified for TTD compensation. Ashcraft at 44. The first part of the test focuses upon the disabling aspects of the injury whereas the latter part determines if there are any other factors, other then the injury, which prevent the claimant from returning to his former position of employment. Id. Thus, the Ashcraft court held that a claimant's incarceration precluded receipt of TTD compensation because, when a person chooses to violate the law, he is presumed to tacitly accept the consequences of his voluntary acts.
 {¶ 52} In State ex rel. Rockwell Internatl. v. Indus. Comm. (1988), 40 Ohio St.3d 44, the court held that an injury-induced abandonment of the former position of employment, as in taking a retirement, is not considered to be voluntary.
 {¶ 53} In State ex rel. Diversitech Gen. Plastic Film Div. v. Indus. Comm. (1989), 45 Ohio St.3d 381, 383, the court held that a claimant's acceptance of a light duty job did not constitute an abandonment of his former position of employment. The Diversitech Gen. court stated:
 {¶ 54} "* * * The question of abandonment is `primarily * * * [one] of intent * * * [that] may be inferred from words spoken, acts done, and other objective facts. * * * All relevant circumstances existing at the time of the alleged abandonment should be considered.' * * *"
 {¶ 55} In Louisiana-Pacific, the claimant was fired for violating the employer's policy prohibiting three consecutive unexcused absences. The court held that the claimant's discharge was voluntary, stating:
 {¶ 56} "* * * [W]e find it difficult to characterize as `involuntary' a termination generated by the claimant's violation of a written work rule or policy that (1) clearly defined the prohibited conduct, (2) had been previously identified by the employer as a dischargeable offense, and (3) was known or should have been known to the employee. Defining such an employment separation as voluntary comports with Ashcraft and Watts [State ex rel. Watts v. Schottenstein Stores Corp. (1993), 68 Ohio St.3d 118] — i.e., that an employee must be presumed to intend the consequences of his or her voluntary acts."
 {¶ 57} The Louisiana-Pacific rationale was applied to preclude TTD compensation where a claimant was fired by his employer for violating his employer's written drug abuse policy. State ex rel. Cobb v. Indus. Comm. (2000), 88 Ohio St.3d 54.
 {¶ 58} In State ex rel. McKnabb v. Indus. Comm. (2001),92 Ohio St.3d 559, the court further explained its decision in Louisiana-Pacific stating:
 {¶ 59} "Now at issue is Louisiana-Pacific's reference to a written rule or policy. Claimant considers a written policy to be an absolute prerequisite to precluding TTC. The commission disagrees, characterizing Louisiana-Pacific's language as merely illustrative of a TTC-preclusive firing. We favor claimant's position.
 {¶ 60} "The commission believes that there are common-sense infractions that need not be reduced to writing in order to foreclose TTC if violation triggers termination. This argument, however, contemplates only some of the considerations. Written rules do more than just define prohibited conduct. They set forth a standard of enforcement as well. Verbal rules can be selectively enforced. Written policies help prevent arbitrary sanctions and are particularly important when dealing with employment terminations that may block eligibility for certain benefits." Id. at 561. (Emphasis sic.)
 {¶ 61} It should be further noted that the Louisiana-Pacific line of cases, including McKnabb, remain good law as the court recently indicated in State ex rel. McCoy v. Dedicated Transport, Inc.,97 Ohio St.3d 25, 2002-Ohio-5305. The syllabus of McCoy states:
 {¶ 62} "A claimant who voluntarily abandoned his or her former position of employment or who was fired under circumstances that amount to a voluntary abandonment of the former position will be eligible to receive temporary total disability compensation pursuant to R.C. 4123.56
if he or she reenters the work force and, due to the original industrial injury, becomes temporarily and totally disabled while working at his or her new job."
 {¶ 63} The commission's reliance upon Louisiana-Pacific presents two problems here: (1) Powerlasers did not fire relator, but viewed her actions as a "voluntary quit"; and (2) even if it could be argued that Powerlasers actions amounted to a firing, Powerlasers never produced a written work rule, a violation of which could become the basis for a voluntary abandonment under Louisiana-Pacific, as clarified by McKnabb, supra.
 {¶ 64} Powerlasers does not contend here that it fired relator for a violation of a written work rule. It does contend, however, that the commission, through its SHO, "explicitly found that claimant's separation from employment was a voluntary departure because she refused to continue performing the light duty work that Powerlasers made available to her." (Powerlasers brief at 6.)
 {¶ 65} The commission's order does suggest some confusion on the part of the SHO as to whether he was finding a voluntary abandonment under Louisiana-Pacific, or a voluntary abandonment based upon consideration of the evidence presented.
 {¶ 66} Here, it is certainly conceivable that the commission could eventually find that relator's actions or inactions must be viewed as a voluntary abandonment of her employment at Powerlasers. As previously noted, the question of abandonment is primarily one of intent that may be inferred from words spoken, acts done, or other objective facts. Diversitech Gen., supra.
 {¶ 67} Here, the commission's analysis of voluntary abandonment is incomplete and inaccurate.
 {¶ 68} The commission incorrectly states that relator's next appointment with Dr. Collins following her April 18, 2001 call to Dr. Collins' office, occurred April 12, 2001, when the record clearly shows that the appointment was kept on April 23, 2001. Then, in a conclusory fashion, the order simply states: "[t]he claimant did not follow Dr. Collins' advice and did not attempt to return to light duty work."
 {¶ 69} The commission's order fails to analyze and weigh the evidence of what happened on the most critical date — April 25, 2001 when, following her appointment with Dr. Collins two days earlier, she reported to work at Powerlasers and then left work to go home. After all, it was the events of April 25, 2001 that Powerlasers viewed as a voluntary quit.
 {¶ 70} The syllabus of State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203, states:
 {¶ 71} "In any order of the Industrial Commission granting or denying benefits to a claimant, the commission must specifically state what evidence has been relied upon, and briefly explain the reasoning for its decision."
 {¶ 72} Here, the commission cannot conclude that there was a voluntary abandonment of employment based solely upon an analysis of the evidence through the April 23, 2001 appointment with Dr. Collins. Pursuant to Noll, the commission's order must include its reasoning and the evidence relied upon with respect to the events of the critical date — April 25, 2001 — when relator reported to work at Powerlasers and allegedly voluntarily quit.
 {¶ 73} Moreover, the commission's order improperly places determinative weight on Powerlasers view of the events as a "voluntary quit." Powerlasers' view is not determinative of the voluntary abandonment issue. The commission must itself weigh the evidence to determine whether relator voluntarily abandoned her employment at Powerlasers. While the commission can consider Powerlasers' view of the events, it cannot abdicate its determination to Powerlasers' view.
 {¶ 74} The magistrate further notes that Powerlasers contends, citing State ex rel. Elyria Foundry Co. v. Indus. Comm. (1998),82 Ohio St.3d 88, that this mandamus action is not ripe for judicial review because Powerlasers has appealed the commission's claim allowance to the common pleas court pursuant to R.C. 4123.512.
 {¶ 75} In Elyria, the employer, Elyria Foundry Company ("EFC"), was appealing the allowance of the claim in common pleas court while challenging in mandamus the commission's award of TTD compensation. The Elyria court held that the mandamus action could not be maintained by EFC because there was a lack of ripeness. The Elyria court stated that EFC was asking it to address the abstract and hypothetical because EFC was already challenging the claim allowance in the common pleas court.
 {¶ 76} Elyria is inapposite to relator's mandamus action here. Relator has an allowed claim with the commission upon which she is entitled to seek benefits. Relator's contention here, is that the commission has not followed the law in determining whether certain benefits, namely TTD compensation, shall be payable on her allowed claim.
 {¶ 77} R.C. 4123.512(H) states:
 {¶ 78} "An appeal from an order issued under division (E) of section 4123.511 of the Revised Code or any action filed in court in a case in which an award of compensation has been made shall not stay the payment of compensation under the award or payment of compensation for subsequent periods of total disability during the pendency of the appeal. * * *"
 {¶ 79} Here, unlike Elyria, relator is not seeking alternative relief in the common pleas court. While, hypothetically, a common pleas court action could result in denial of the right to participate, relator has already established her right to participate before the commission and is entitled to benefits in accordance with law.
 {¶ 80} Moreover, R.C. 4123.512(H) was not a factor in Elyria. Here, it would violate R.C. 4123.512(H) to hold that a claimant with an allowed claim cannot bring a mandamus action because the employer is pursuing a common pleas court action.
 {¶ 81} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate the July 12, 2001 order of its staff hearing officer to the extent that it determines that relator voluntarily abandoned her employment and on that basis denies TTD compensation, and to enter an amended order consistent with this magistrate's decision that appropriately determines the voluntary abandonment issue and either grants or denies relator's request for TTD compensation.