[Cite as *State ex rel. Tolle v. Spherion of Mid-Ohio, Inc.*, 2015-Ohio-3593.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Angela M. Tolle, | : | |
| Relator, | : | |
| v. | : | No. 14AP-717 |
| Spherion of Mid-Ohio, Inc. and Industrial Commission of Ohio, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on September 3, 2015

*Badnell & Dick Co., L.P.A.*, and *Kelly L. Badnell*, for relator.

*Lee M. Smith & Assoc. Co., Rebecca J. Johnson*, and *Elizabeth P. Weeden*, for respondent Spherion of Mid-Ohio, Inc.

*Michael DeWine*, Attorney General, and *Kevin J. Reis*, for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

LUPER SCHUSTER, J.

{¶ 1} Relator, Angela M. Tolle, filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its orders which denied her request for temporary total disability ("TTD") compensation and determined she had been overpaid TTD compensation, and ordering the commission to find that she is entitled to that compensation.

{¶ 2}   The court referred this matter to a magistrate pursuant to Civ.R. 53(C) and Loc.R. 13(M) of the Tenth District Court of Appeals.  The magistrate issued the appended decision, including findings of fact and conclusions of law, and recommended this court grant a writ of mandamus and order the commission to vacate its order which denied Tolle an award of TTD compensation; to vacate the order finding Tolle was overpaid TTD compensation; and to issue a new order finding that Tolle remained eligible for that award.

## I.  Facts and Procedural History

{¶ 3}   As more fully set forth in the magistrate's decision, on October 8, 2013, while working for respondent Spherion of Mid-Ohio, Inc. ("Spherion"), Tolle sustained a work-related injury.  Her arm was crushed when her supervisor hit a wrong button while she was loading a braider.  While at the hospital for treatment for the injury, a post-injury drug screen resulted in a positive test for marijuana.  Effective October 15, 2013, Spherion terminated Tolle because her positive test for marijuana was a violation of company policy.

{¶ 4}   Tolle requested TTD compensation beginning October 9, 2013.   An administrator for the Ohio Bureau of Workers' Compensation ("BWC") heard the matter and denied Tolle's request for TTD compensation on October 24, 2013.  Tolle appealed. On November 21, 2013, a district hearing officer ("DHO") affirmed the TTD compensation denial.  Tolle appealed again and that mater was heard before a staff hearing officer ("SHO").  The SHO vacated the DHO order and found that Tolle was eligible for TTD compensation based on *State ex rel. Ohio Welded Blank v. Indus. Comm.,* 10th Dist. No. 08AP-772, 2009-Ohio-4646 and *State ex rel. Gross v. Indus. Comm.,* 115 Ohio St.3d 249, 2007-Ohio-4916 ("*Gross II*").

{¶ 5}   Spherion's appeal was refused by the commission; however, the commission heard Spherion's request for reconsideration on April 29, 2014.  The commission found that *State ex rel. Paysource USA, Inc. v. Indus. Comm.,* 10th Dist. No. 08AP-677 (June 30, 2009), applied and Tolle was not entitled to TTD compensation and had been overpaid $11,278.49.  Tolle thereafter filed this mandamus action.

{¶ 6}   On March 18, 2015, the magistrate issued a decision recommending this court grant Tolle's request for a writ of mandamus.  Pursuant to Civ.R. 53, both Spherion and the commission filed objections to the magistrate's decision.

## II.  Objections to the Magistrate's Decision

{¶ 7}   The commission sets forth the following objections to the magistrate's decision:

> [1.] The magistrate erred in her interpretation and application of [*State ex rel. Gross v. Indus. Comm.,* 115 Ohio St.3d 249, 2007-Ohio-4916] *Gross II* to the extent she held that a post-injury positive drug test that detects a pre-injury work rule violation can never be the basis for voluntary abandonment.
>
> [2.] The magistrate erred in her interpretation and application of [*State ex rel. Pretty Prods. v. Indus. Comm.*, 77 Ohio St.3d 5 (1996)] and [*State ex rel. Reitter Stucco Inc. v. Indus. Comm.,* 117 Ohio St.3d 71, 2008-Ohio-499].
>
> [3.] The magistrate erred in her interpretation and application of the other cases cited for the proposition that a pre-injury infraction may not serve as the basis for a voluntary abandonment.
>
> [4.] The magistrate erred by relying on *Gross II*, and rejecting [*State ex rel. Paysource USA, Inc. v. Indus. Comm.,* 10th Dist. No. 08AP-677 (June 30, 2009)], which creates bad public policy in that it frustrates efforts to maintain a drug free work place.

{¶ 8}   Spherion sets forth the following objections to the magistrate's decision:

> [1.] The Magistrate erred by holding that *Gross II* [*State ex rel. Gross v. Indus. Comm.,* 115 Ohio St.3d 249, 2007-Ohio-4916] precludes denial of TTD in pre-injury drug use cases under the voluntary abandonment doctrine.
>
> [2.] The Magistrate's decision runs contrary to public policy.

## III.  Discussion

{¶ 9}   Because they raise related issues, we will address the commission's first, second, and third objections and Spherion's first objection together.  The commission and Spherion argue that the magistrate erred in interpreting the relevant case law.  The issue

presented here is whether the workplace abandonment theory may be applied to preclude TTD compensation due to pre-injury behavior, discovered after the injury, when the injury caused disability independent of the dischargeable offense. This court recently addressed this same issue in *State ex rel. Cordell v. Pallet Cos. Inc.,* 10th Dist. No. 13AP-1017, 2014-Ohio-5561. In *Cordell,* this court relied on *Gross II* and *Ohio Welded Blank* and concluded that the doctrine of voluntary abandonment did not apply to receipt of TTD compensation in a case involving a pre-injury infraction undetected until after injury. Therefore, we agree with the magistrate's reliance on the reasoning and conclusion reached in *Cordell.* Accordingly, we overrule the commission's first, second, and third objections and Spherion's first objection.

{¶ 10} The remaining objections, the commission's fourth objection and Spherion's second objection, contend that the magistrate's decision runs contrary to public policy. This public policy argument was also raised in *Cordell.* As noted in *Cordell,* the General Assembly is the best place to address policy issues. "As an intermediate appellate court, this court is bound by decisions of the Supreme Court of Ohio. As previously discussed, *Gross II* is dispositive of the issue presented here." *Cordell* at ¶ 7. Therefore, we overrule the commission's fourth objection and Spherion's second objection.

## IV. Conclusion

{¶ 11} Following our independent review of the record, pursuant to Civ.R. 53, we find that the magistrate has properly determined the facts and applied the appropriate law. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. We therefore overrule the commission's and Spherion's objections to the magistrate's decision. In accordance with the magistrate's decision, we grant Tolle's request for a writ of mandamus ordering the commission to vacate its order denying Tolle TTD compensation; to vacate its order finding overpayment of TTD compensation; and to issue an order awarding Tolle TTD compensation.

*Objections overruled; writ of mandamus granted.*

TYACK and KLATT, JJ., concur.

## APPENDIX

### IN THE COURT OF APPEALS OF OHIO

### TENTH APPELLATE DISTRICT

State ex rel. Angela M. Tolle,                    :

        Relator,                    :

v.                    :                    No. 14AP-717

Spherion of Mid-Ohio, Inc. and          :                    (REGULAR CALENDAR)
Industrial Commission of Ohio,
                            :

        Respondents.                    :

                            :

---

### M A G I S T R A T E ' S   D E C I S I O N

### Rendered on March 18, 2015

---

*Badnell & Dick Co., L.P.A.,* and *Kelly L. Badnell*, for relator.

*Lee M. Smith & Assoc. Co., Rebecca J. Johnson* and *Elizabeth P. Weeden,* for respondent Spherion of Mid-Ohio, Inc.

*Michael DeWine*, Attorney General, and *Kevin Reis,* for respondent Industrial Commission of Ohio.

---

### IN MANDAMUS

{¶ 12} Relator, Angela M. Tolle, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which found that she was not entitled to an award of temporary total disability ("TTD") compensation because she had voluntarily abandoned her employment and ordering the commission to find that she was entitled to that award

of TTD compensation.  Further, to the extent that the commission found that relator had been overpaid TTD compensation, relator asks that the finding be vacated.

Findings of Fact:

{¶ 13} 1. Relator sustained a work-related injury while loading a braider when her supervisor hit the wrong button which caused the machine to be activated and caused a crushing injury to her left arm.  Relator's workers' compensation claim is allowed for: "displaced angulation fractures distal radius and ulna left."

{¶ 14} 2. Immediately following the injury, relator was taken to the hospital for treatment and a post-injury drug screen was performed.  It is undisputed that relator tested positive for marijuana.  The test results were made available October 15, 2013.

{¶ 15} 3. In a letter dated October 16, 2013, relator's employer, Spherion of Mid-Ohio, Inc. ("Spherion"), notified relator that she was being terminated:

> This letter is an official confirmation of termination of your employment effective October 15, 2013 from Spherion.
>
> The reason for termination was a violation of company policy. Your post accident drug screen results were positive. Spherion's policy is "I understand that some clients require drug testing, credit checks, and/or criminal history checks prior to assignment and as a condition to continue such assignments and that because of these results, may be denied employment on an assignment. I have the option of not being considered for assignments with these clients. **Failing a drug test will result in termination.**" You signed acknowledgement that you understood and agreed to the policies when you accepted your assignment with Spherion.
>
> Therefore Spherion will no longer consider you for temporary assignments.

(Emphasis sic.)

{¶ 16} 4. Under the company's policy and procedures signed and acknowledged by relator on March 15, 2013, a positive drug test would result in her discharge.

{¶ 17} 5. Relator filed a request for TTD compensation beginning October 9, 2013.

{¶ 18} 6. The matter was heard before the Administrator of the Ohio Bureau of Workers' Compensation ("BWC").  In an order mailed October 24, 2013, the

administrator denied relator's request for TTD compensation finding that she had been terminated from employment due to a violation of a written work rule.

{¶ 19} 7. Relator appealed and the matter was heard before a district hearing officer ("DHO") on November 21, 2013. The DHO affirmed the administrator's order finding that relator's termination from employment due to her violation of Spherion's written work rule and the fact that she tested positive for marijuana rendered her ineligible to receive TTD compensation.

{¶ 20} 8. Relator appealed and the matter was heard before a staff hearing officer ("SHO") on January 16, 2014. The SHO vacated the prior DHO order and found that the positive drug test did not render relator ineligible for an award of TTD compensation and that, based on the medical evidence, she was entitled to that award. Specifically, the SHO stated:

> Temporary total disability compensation is ordered to be paid from 10/09/2013 through the present, 01/16/2014, and is ordered to continue upon submission of appropriate medical proof of ongoing disability related to the allowed conditions in this claim. The Staff Hearing Officer relies on the Medco-14 reports of Dr. Godfrey dated 10/22/2013, 11/29/2013, and 12/24/2013 in rendering this decision. The Staff Hearing Officer finds that the Injured Worker did not voluntarily abandon her position of employment so as to preclude the payment of temporary total disability compensation in this claim. The Staff Hearing Officer notes that the Injured Worker received a post accident drug screen on 10/08/2013. In a confirmatory report from Dr. Harris dated 10/15/2013, that drug screen was noted to be positive for marijuana. Consistent with the Employer's policy regarding drug use, the Injured Worker was sent a letter from the Employer dated 10/16/2013 indicating that she was being terminated from employment effective 10/15/2013, the date of the confirmatory drug test result. Termination was performed consistent with the Employer's "Policy and Procedures"#5, which indicates that a positive drug test will result in discharge. The Injured Worker signed an acknowledgement of receipt of the policy on 03/15/2013. While the Employer was within its rights to terminate the Injured Worker due to a violation of the Employer's drug policy, the Staff Hearing Officer finds that this termination does not preclude the payment of temporary total disability compensation in this claim given the facts of the instant case

and pursuant to [*State ex rel. Ohio Welded Blank v Indus. Comm.,* 10th Dist. No. 08AP-772, 2009-Ohio-4646], a decision issued by the Tenth District Court of Appeals on 09/08/2009. The Injured Worker in the instant claim acknowledged that she had smoked marijuana the weekend before the industrial injury and in fact had told Ms. Yeager at the emergency room that she would probably fail the drug test due to that fact. However, pursuant to [*Ohio Welded Blank*], relying on [*State ex rel. Gross v. Indus. Comm.,* 115 Ohio St.3d 249, 2007-Ohio-4916 (*"Gross II"*)], the Court indicated that the voluntary abandonment doctrine has not been applied to work rule violations <u>preceding</u> or contemporaneous with the injury. The Court specifically indicated that the Court in <u>Gross II</u> indicated that a pre-injury infraction undetected until after the injury is not grounds for concluding the Injured Worker voluntarily abandoned her employment. The Court indicated that although the infraction may be grounds for terminating the Injured Worker's employment, it is not grounds for concluding the Injured Worker abandoned her employment so as to preclude the payment of temporary total disability benefits. The Staff Hearing Officer notes that no argument was made by the Employer and no evidence was presented by the employer to indicate that the injury in the instant claim resulted from the Injured Worker's being under the influence of marijuana. Dr. Godfrey indicates that the Injured Worker was temporarily and totally disabled beginning the day after the injury on 10/09/2013 and thus at the time she was terminated, she was certified as being temporarily and totally disabled. Based on these facts, the Staff Hearing Officer finds the Injured Worker is entitled to the payment of temporary total disability compensation in this claim.

(Emphasis sic.)

{¶ 21} 9. Spherion's appeal was refused by order of the commission mailed February 12, 2014.

{¶ 22} 10. Spherion filed a request for reconsideration and a finding that the SHO failed to apply this court's decision in *State ex rel. PaySource USA Hoist, Inc. v. Indus. Comm.,* 10th Dist. No. 08AP-677 (June 30, 2009).

{¶ 23} 11. Following a hearing on April 29, 2014, the commission found that Spherion met its burden of proving the SHO's order contained a clear mistake of law and

granted the request for reconsideration. Thereafter, the commission determined that relator was not entitled to an award of TTD compensation citing this court's decision in *PaySource*. One commissioner dissented and explained why this court's decision in *PaySource* was not controlling.

{¶ 24} 12. Because the commission found that relator was not entitled to TTD compensation, the BWC determined that relator had been overpaid $11,278.49.

{¶ 25} 13. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 26} This court recently addressed this issue and clearly explained that its decision in *PaySource* is not controlling in *State ex rel. Cordell v. Pallet Co. Inc.,* 10th Dist. No. 13AP-1017, 2014-Ohio-5561. James F. Cordell sustained a work-related injury when a third-party truck driver pulled away from the loading dock on which he was positioned on a tow motor resulting in a fall from the dock plate to the ground. While at the emergency room, a post-accident drug screen was ordered and Cordell tested positive for marijuana metabolites and opiates, specifically morphine.

{¶ 27} Pursuant to his employer's written policy, Cordell was terminated after failing the post-accident drug screen.

{¶ 28} Cordell filed an application for TTD compensation and, as happened here, an SHO found that TTD compensation was payable despite the fact that Cordell had tested positive for marijuana and morphine after the work-related injury. However, Cordell's employer filed a request for reconsideration which was granted and, citing this court's decision in *PaySource,* this court determined that Cordell was not entitled to an award of TTD compensation.

{¶ 29} Cordell filed a mandamus complaint in this court and this magistrate discussed the relevant case law, including *PaySource,* specifically stating:

> In 2009, within three months of each other, this court released two decisions, *PaySource* and *State ex rel. Ohio Welded Blank v. Indus. Comm.,* 10th Dist. No. 08AP-772, 2009-Ohio-4646, each of which dealt with factual situations similar to those present in this case. William A. Shoemaker ("Shoemaker") and Steven Farr ("Farr") both sustained work-related injuries. Pursuant to their employers' drug-free workplace policies, both Shoemaker and Farr submitted to

drug testing. Shoemaker's test was positive for cocaine, and Farr's test was positive for marijuana. Both Shoemaker and Farr were terminated from their employment for having violated their employers' policies, and their employers argued that their violations constituted a voluntary abandonment of their employment precluding their eligibility for TTD compensation. In both cases, the commission awarded the employees TTD compensation, and the employers filed mandamus actions in this court.

In *PaySource,* decided June 30, 2009, the record indicates that Shoemaker was "verbally notified * * * that he had tested 'positive for cocaine' and that 'under our Drug-Free workplace policy he would have to be terminated.' The February 5, 2008 verbal notification was later memorialized in a March 14, 2008 letter." In the SHO order under review, the SHO stated:

Counsel for the employer indicated that the drug screen was performed as a result of the injured worker being involved in the workplace fall from the scaffold accident. The results of the drug screen apparently became available and published on 02/04/2008. As a result, the employer fired the injured worker on 02/05/2008. Counsel for the employer indicated that the employer fired the injured worker because he tested positive for cocaine on the drug screen.

The employer argues that the injured worker therefore voluntarily abandoned his former position of employment when he ingested cocaine approximately three days prior to the fifteen foot fell [sic] off of the scaffold while working.

The SHO rejected the employer's argument and stated as follows:

The employer admits that it fired the injured worker as a result of testing positive on a drug screen. That drug screen was performed after the injured worker had sustained his compensable workplace injury, and after the injured worker had become physically unable to return to his former position of employment in fact; the employer admits that the post accident drug screen was performed only because the injured worker had sustained an on the job injury. The drug screen and resultant firing arose out of the compensable work injury.

Upon review, this court accepted the magistrate's argument to the contrary:

Because it was found that the "drug screen" and the resultant job termination occurred after the industrial injury prevented claimant from returning to his former position of employment, the commission concluded that the job departure was involuntary.

The commission's analysis of the timing of the termination is seriously flawed because the commission inappropriately viewed testing positive on the drug screen as the offense for which claimant was terminated. Clearly, it was claimant's ingestion or "use" of cocaine that was the offense for which claimant was terminated. The drug screen was only the means employed to detect the use of the illegal substance. Clearly, claimant's use of the prohibited substance occurred prior to the industrial injury, and thus the prohibited conduct could not have occurred during any period of disability resulting from the industrial injury. Page 22 of the employee handbook states that: "Employees need to be aware that certain offenses, including but not limited to use, possession, sale of illegal drugs * * *, will normally result in immediate termination." That portion of page 22 put claimant on notice that his admitted ingestion or use of cocaine could result in job termination if the ingestion or use were ever detected by a drug screen required at the time of an industrial injury.

The magistrate further recognizes that Brosnan's March 14, 2008 letter memorializing the February 5, 2008 notification of termination does not specify that claimant was being terminated for "use." However, the letter does state that claimant was being terminated "under our Drug-Free workplace policy."

It is unreasonable under the circumstances to infer from Brosnan's letter that use of cocaine as determined by the drug screen was not the conduct that the policy prohibits and for which Omni terminated employment.

As a result, this court determined that Shoemaker was not entitled to TTD compensation. However, the court never addressed the applicability of [*State ex rel. Gross v. Indus. Comm.,* 115 Ohio St.3d 249, 2007-Ohio-4916 (*"Gross II"*)] or its effect on the outcome.

By comparison, in *Ohio Welded Blank,* decided September 8, 2009, after receiving the positive results from the drug test, the employer met with Farr and informed him that he was going to be terminated because he tested positive for marijuana. Later, the employer sent Farr a letter indicating, in part:

[O]n October 24, 2007, you tested positive for an illicit substance on a drug screen on September 28, 2007. This positive drug screen is a violation of the Company's Substance Abuse Policy and in accordance with this policy the Company is terminating your employment effective September 28, 2007.

*Id.* at 30.

At the commission level, the employer argued that Farr had voluntarily abandoned his employment; however, the commission applied the rationale from *Gross II* and found that TTD compensation was payable:

A positive marijuana metabolite level was discovered during routine post-accident testing which caused claimant to be terminated after the disability due to the injury had begun. As soon as he was physically able, claimant returned to work with a different employer. This would rebut the contention that claimant had abandoned the work force or otherwise removed himself from employment voluntarily and unrelated to the claim. The presence of a prohibited drug level was discovered subsequent to the injury and after disability from the injury existed independent of any drug policy violation. Staff Hearing Officer finds no legal precedent which would apply an abandonment of the workplace theory to pre-injury behavior, discovered after the injury, where the injury has caused disability independent of the dischargeable defense. *Pretty Products v. Industrial Commission,* (1996), 77 Ohio St.3d 5, and *State ex rel. Reitter Stucco, Inc. v. Industrial Commission,* slip Opinion no. 2008-Ohio-499-No.2007-0060-submitted Nov. 27, 2007-decided Feb. 13, 2008, are followed. Claimant was disabled due to the injury at the time of termination. The cause of the termination is unrelated to the injury claim. Since claimant was medically incapable of returning to his former position of employment at the time of his discharge,

Staff Hearing Officer concludes that he is eligible to receive the temporary total disability compensation as ordered.

*Id.* at 34.

Despite of the fact that the employer continued to argue that Farr ingested marijuana sometime during the week preceding his injury and obviously violated the written work rule before his injury, this court applied *Gross II* and stated:

*Gross II* stated the voluntary abandonment doctrine had not been applied to work rule violations preceding or contemporaneous with the injury. Here even if we adopt relator's position that the date of the infraction, not the date of termination, determines application of the voluntary abandonment doctrine, *Gross II* indicates that a pre-injury infraction undetected until after the injury is not grounds for concluding claimant voluntarily abandoned his employment. Although the infraction may be grounds for terminating relator's employment, *Gross II* clarifies that it is not grounds for concluding claimant abandoned his employment so as to preclude temporary total benefits. The result is especially compelling here, where the employer presented no evidence to suggest the injury resulted from relator's being under the influence of drugs or alcohol.

*Id.* at 20.

In *PaySource,* this court departed from the principles established by the Supreme Court of Ohio. Because this court did not address the applicability of *Gross II* and its effect on the outcome, this magistrate is unable to address and/or explain the reasons why this decision is contrary to other decisions addressing the same issue. However, this court has not followed *PaySource.*

In a decision rendered in September 2011, two years after both *PaySource* and *Ohio Welded Blank,* this court followed *Ohio Welded Blank* and determined that the injured worker who tested positive for marijuana during a post-accident drug test was entitled to an award of TTD compensation. In [*State ex rel. Ohio Decorative Prods., Inc. v. Indus. Comm.,* 10th Dist. No. 10AP-498 (Sept. 15, 2011)], Randy S. Herron sustained serious injuries when his ponytail was caught onto a rotating shaft of a grinding machine. Herron tested positive for opiates and cannabinoids, and his employer argued that

his claim should be barred under R.C. 4123.54 because there was a rebuttable presumption that Herron was intoxicated or under the influence of a controlled substance, not prescribed by his physician, and the fact that he was intoxicated or under the influence of a controlled substance was the proximate cause of his injury. A DHO found that R.C. 4123.54 did not apply and determined that TTD compensation was payable.

Herron's employer appealed and, at that time, conceded that the requirements of R.C. 4123.54 had not been met. However, the employer continued to argue that Herron's termination for violating the drug-free workplace policy constituted a voluntary abandonment of his employment and rendered him ineligible to receive TTD compensation. The SHO disagreed and, citing *Gross II, Pretty Prods.,* and *Reitter Stucco,* concluded that TTD compensation was payable. Despite the fact that the SHO found that the employer did establish all three requirements of *Louisiana-Pacific,* by applying *Gross II, Pretty Prods.,* and *Reitter Stucco,* the SHO concluded that Herron's pre-injury behavior did not foreclose the payment of TTD compensation.

In arguing otherwise, the employer contends that *Ohio Welded Blank, Ohio Decorative Prods.,* and *State ex rel. Ohio State Univ. Cancer Research Hosp. v. Indus. Comm.,* 10th Dist. No. 09AP-1027, 2010-Ohio-3839, are in contravention of [*State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.*, 72 Ohio St.3d 401 (1995)] and the Supreme Court of Ohio's decision in [*State ex rel. Cobb v. Indus. Comm.*, 88 Ohio St.3d 54 (2000)]. Relator points out that, in *Cobb,* the Supreme Court held that a post-injury termination based upon a violation of an employer's drug policy can preclude the payment of TTD compensation provided the three-prong test from *Louisiana-Pacific* is demonstrated. For the reasons that follow, the magistrate finds that relator's argument is not well-taken.

First, *Ohio Welded Blank, Ohio Decorative Prods.* and *Ohio State Univ. Cancer Research Hosp.* are not in contravention of *Louisiana-Pacific.* Instead, both this court and the Supreme Court of Ohio have been very clear in explaining that *Louisiana-Pacific* and *Pretty Prods.* can both be applied in certain circumstances. As such, even where an employer demonstrates that the *Louisiana-Pacific* test has been met, the injured worker may still be entitled to receive TTD

compensation. In explaining how the two lines of cases are to be applied, the Supreme Court specifically noted that both *Louisiana-Pacific* and *Pretty Prods.* may factor into the analysis. If the requirements of *Louisiana-Pacific* are met, suggesting that the termination is voluntary, the commission and courts must still consider whether the employee was disabled at the date of termination.

Second, the employer's reliance on *Cobb* is misplaced. The *Cobb* case was decided seven years before the Supreme Court of Ohio rendered its decision in *Gross II* and has not been applied in these circumstances since then. As such, it appears the holding in *Cobb* has been rejected by the Supreme Court of Ohio in *Ohio Welded Blank* and *Ohio Decorative Prods.*

The magistrate specifically notes that the *PaySource* case is the only case since *Gross II* was decided in which an injured worker has been denied TTD compensation because the injured worker tested positive for drugs during post-injury drug tests. However, this court did not address the applicability of *Gross II* to the facts in *PaySource.* As such, the magistrate cannot address and/or explain the reasons why the decision in *PaySource* was reached. As this magistrate noted in *Ohio Decorative Prods.,* this court should continue to apply the law as pronounced by the Supreme Court in *Gross II.* As the Supreme Court stated, the voluntary abandonment doctrine has never been applied to violations of written work rules which precede or are contemporaneous with the injury. If ingesting marijuana actually is a violation of the written work rule, the only employees at risk for being terminated for violating this offense are employees who sustain compensable work-related injuries while working for their employer. Any other employee who also ingested marijuana at the same time will not be terminated because their "violation" will not be brought to light.

The employer emphasizes that TTD compensation can only be awarded when the disability arising from the allowed conditions causes the employee to suffer a loss of wages. The employer asserts here that relator's termination from employment for violating the written work rule is the reason relator is without wages. In other words, employer asserts that the violation of the written work rule and subsequent termination break the causal connection between the

disability arising from the allowed conditions and relator's lack of wages. For the reasons that follow, the magistrate disagrees.

It is undisputed that relator was injured at work on February 16, 2012. Further, it is also undisputed that relator was immediately rendered temporarily totally disabled. In other words, the allowed conditions resulting from the work-related injury immediately prevented relator from working and caused him to suffer a loss of wages. But for the injury, relator would have been able to continue working. Relator asserts that it could have administered a random drug test that same day and, had relator tested positive, he would have been terminated. Therefore, the employer argues that the causal connection between the allowed conditions and the resulting loss of wages was severed.

The magistrate finds that it is immaterial that relator would have been terminated if the employer had subjected him to a random drug test, which he would have failed. The employer did not subject relator to a random drug test. Here, the allowed conditions which resulted from the workplace injury rendered relator unable to return to his former position of employment and caused him to be without wages. Employers can show a break in the causal connection if they can meet the burden of proof under R.C. 4123.54 and demonstrate that an injured worker was actually impaired by the drugs at the time the injury occurred.

In *State ex rel. Smith v. Superior's Brand Meats, Inc.,* 76 Ohio St.3d 408, 411 (1996), the Supreme Court of Ohio recognized the possible abuse that may occur where the termination of employment may result in the denial of TTD compensation for the injured worker and stressed that it is "imperative to carefully examine the totality of the circumstances when such a situation exists." Especially here, where there is no evidence that relator was under the influence of the drugs he ingested, the magistrate finds that, while the employer certainly could terminate relator, the commission abused its discretion when it found a voluntary abandonment and denied relator TTD compensation.

This conclusion also follows the reasoning of other cases, including *Ohio State Univ. Cancer Research Hosp.* (claimant returned to modified duty and while working modified duty was terminated for his pre-injury violation of the employer's

policy against harassment—TTD payable); and *State ex rel. Nick Strimbu, Inc. v. Indus. Comm.,* 106 Ohio St.3d 173, 2005-Ohio-1386 (while claimant was off from work following his work-related injury, the employer learned that, pre-injury, he had violated the employer's policy by falsifying his job application—TTD payable). Under the employer's theory, these pre-injury cases would also need to be reevaluated.

Based on the foregoing, it is this magistrate's decision that this court should issue a writ of mandamus ordering the commission to vacate its order which denied relator TTD compensation and issue an order finding that relator is entitled to that compensation.

*Id.* at ¶ 33-51.

{¶ 30} Cordell's employer filed objections to the magistrate's decision which this court rejected. Specifically, this court stated:

*State ex rel. Gross v. Indus. Comm.,* 115 Ohio St.3d 249, 2007-Ohio-4916 (" *Gross II* ") and *State ex rel. Ohio Welded Blank v. Indus. Comm.,* 10th Dist. No. 08AP-772, 2009-Ohio-4646, the magistrate found that the doctrine of voluntary abandonment did not apply to bar receipt of TTD compensation in a case involving a pre-injury infraction undetected until after the injury. Therefore, the magistrate has recommended that we grant relator's request for a writ of mandamus and order the commission to enter an order granting relator TTD compensation.

Respondent, Pallet Companies, Inc., has filed objections to the magistrate's decision. In its first objection, Pallet argues that the magistrate erred by failing to apply the legal principles discussed in *State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.,* 72 Ohio St.3d 401 (1995); *State ex rel. McCoy v. Dedicated Transport, Inc.,* 97 Ohio St.3d 25, 2002-Ohio-5305; *State ex rel. Cobb v. Indus. Comm.,* 88 Ohio St.3d 54 (2000); and *State ex rel. PaySource USA, Inc. v. Indus. Comm.,* 10th Dist. No. 08AP-677 (June 30, 2009) (memorandum decision). We disagree.

As indicated in the magistrate's decision, the issue raised in Pallet's first objection is resolved by *Gross II* and this court's decision in *Ohio Welded Blank.* Relying on *Gross II,* this court expressly held that:

*Gross II* indicates that a pre-injury infraction undetected until after the injury is not grounds for concluding claimant voluntarily abandoned his employment. Although the infraction may be grounds for terminating relator's employment, *Gross II* clarifies that it is not grounds for concluding claimant abandoned his employment so as to preclude temporary total benefits.

*Ohio Welded Blank* at ¶ 20.

As noted by the Supreme Court in *State ex rel. Reitter Stucco, Inc. v. Indus. Comm.,* 117 Ohio St.3d 71, 2008-Ohio-499, "even if a termination satisfies all three *Louisiana-Pacific* criteria for being a voluntary termination, eligibility for temporary total disability compensation remains if the claimant was still disabled at the time the discharge occurred." *Id.* at ¶ 10. Therefore, Pallet's argument that *Louisiana-Pacific* and *McCoy* prelude relator's receipt of TTD compensation lacks merit.

Nor does *Cobb* require a different result. As noted by the magistrate, the application of the voluntary-abandonment doctrine to a pre-injury infraction undetected until after injury is controlled by *Gross II* and *Ohio Welded Blank,* not *Cobb. Cobb* did not involve a pre-injury infraction. Lastly, we are unpersuaded by Pallet's reliance on this court's decision in *PaySource.* Although *PaySource* does support Pallet's argument, we note that *PaySource* was a memorandum decision that adopted a magistrate's decision to which there were no objections. It does not appear that the applicability of *Gross II* was even raised in *PaySource.* Moreover, in *Ohio Welded Blank* and *State ex rel. Ohio Decorative Prods., Inc. v. Indus. Comm.,* 10th Dist. No. 10AP-498 (Sept. 15, 2011) (memorandum decision), this court did not follow the magistrate's legal analysis in *PaySource* based upon *Gross II.* For these reasons, we overrule Pallet's first objection.

In its second objection, Pallet contends that the magistrate's decision runs contrary to public policy. Although Pallet's argument highlights a public policy issue, that issue is best addressed in the General Assembly or in the Supreme Court of Ohio. As an intermediate appellate court, this court is bound by decisions of the Supreme Court of Ohio. As previously discussed, *Gross II* is dispositive of the issue

> presented here. Therefore, we overrule Pallet's second objections.
>
> Following an independent review of this matter, we find that the magistrate has properly determined the facts and applied the appropriate law. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we grant relator's request for a writ of mandamus.

*Id.* at ¶ 2-8.

{¶ 31} For the same reasons this court determined that Cordell was entitled to an award of TTD compensation despite the fact that he tested positive for drugs in a post-accident drug screening, relator herein, likewise, remained eligible for an award of TTD compensation. This court has expressly acknowledged that its decision in *PaySource* did not address the relevant case law and carries no weight whatsoever. The pertinent issue involves the reason relator was without wages. Was it because her supervisor accidentally started her machine to cycle and broke her arm or was it because she smoked marijuana? The employer does not argue that her use of marijuana adversely affected her judgment. Inasmuch as there is no challenge to the medical evidence relator submitted in support of her application for TTD compensation, it is this magistrate's decision that this court should grant a writ of mandamus ordering the commission to vacate its order which denied relator an award of TTD compensation, should vacate the order finding that she was overpaid TTD compensation, and the commission should issue a new order finding that relator remained eligible for that award.

/S/ MAGISTRATE
STEPHANIE BISCA

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).